THE IN UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

MILTON WASHINGTON,                      :

           PLAINTIFF               :

                                :                3:21cv0069

                                :

           vs.                     :        CIVIL ACTION NO.

                                :

LEHIGH COUNTY DISTRICT ATTORNEY'S :

OFFICE                                  :

DISTRICT ATTORNEY JAMES B. MARTIN :

et al,                                  ;

           DEFENDANTS              :

FILED
SCRANTON
JAN 1 2 2021
Per_____
DEPUTY CLERK

Plaintiff Milton Washington bring this Civil Action under 42 U.S.C.
§1983 for access to DNA evidence that has been granted for DNA
testing by Stipulated Order, whereupon both parties agreed that DNA
testing shall be conducted on all evidence in the District
Attorney's possession. Some DNA testing has been completed and
plaintiff has been excluded. Plaintiff seek to test the remainder of
the untested DNA evidence in the possession of the defendants, the
Lehigh County District Attorney's Office and the District Attorney
James B. Martin, et al. Plaintiff request an injunction be issued
requiring the defendants to release the untested biological evidence
of the following: 1.) The victims underwear, 2.) Three vaginal swabs
dried out, 3.) Three vaginal glass smear slides dried out, and 4.)
The victims fingernail clippings to be subject to DNA testing.

## A. PARTIES

1. Plaintiff Milton Washington is and at all time relevant to this complaint. On September 24, 1987, Mr. Washington was wrongfully convicted of murdering his girlfriend Mrs. Tina Metzger Wyatt, and as a result has served 32 years on a life sentence. As such, the release of the withheld DNA evidence would provide a basis for his exoneration.

2. Defendants et al, Lehigh County District Attorney's Office, District Attorney James B. Martin, Esq., Sr. Deputy District Attorney Heather Gallagher, Esq., et al., at all time relevant to this complaint, they are Officers of the Court, who acted in concert with one another to deny DNA testing on; 1.) The victims underwear, which has the same DNA value as the autopsy vaginal swabs and vaginal smears, 2.) Three vaginal swabs dried out, 3.) Three vaginal glass smear slides dried out, and 4.) The victims fingernail clippings to be subject to DNA testing. The defendants actions has deprived plaintiff of his constitutional protected rights under the Fourteenth Amandment.

## B. JURISDICTION AND RELIEF SOUGHT

3.    Milton Washington is currently incarcerated at Pennsylvania State Correctional Institution at Dallas, 1000 Follies RD, Dallas, PA. 18612-0286. Mr. Washington is serving a prison sentence imposed as a result of the conviction is at issue here.

4.    Milton Washington as he has done since his arrest on this matter-maintains his absolute innocence.

5.    Plaintiff Mr. Washington seeks an injunction from this Honorable Court directing the defendants to release only the DNA biological evidence that has never been subjected to DNA testing; (1!) The victim's underwear containing acid phosphatase, an enzyme found in semen, and sperm, (2) Three vaginal swabs dried out, (3) Three vaginal glass smear slides dried out, and (4) The victims fingernail clippings, this evidence still exist and in the possession of the defendants. This Court has jurisdiction pursuant to 42 U.S.C. § 1983.

## C. PLAINTIFF'S CLAIM FOR RELIEF

6.    The plaintiff seeks relief pursuant 42 U.S.C. §1983 that the Items of evidence continue to exist and have not been subjected to DNA testing and never been subjected to DNA testing. The items are in the possession and control of the defendants. The defendants have, (1) deprived plaintiff of Due Process Of Law, (2) deprived plaintiff of the opportunity to make a conclusive showing that he is innocence of the crime for which he is incarcerated, in violation of Due Process of the Fourteenth Amendment, (3) deprived plaintiff of the opportunity to make a conclusive showing of actual innocence,

-3-

and they are in violation of the Cruel and Unusual Punishment Clause of the Eight Amendment, (4) The defendants deprived plaintiff of his right to present evidence of innocence in State Court, Federal Court, or before the Pennsylvania State Board of Pardons, and therefore they are in violation of the Confrontation and Compulsory Process Clauses of the Sixth Amendment, (5) The defendants deprived plaintiff of the opportunity to effectively litigate his claim that he is innocence of the crime for which he is currently incarcerated for, thereby preventing plaintiff access to the state and federal court to obtain legal relief, therefore the defendants are in violation of the Due Process and Equal Protection guarantees of the Fourteenth Amendment and (6) The defendants deprived plaintiff of his right to avail himself of the opportunity to apply for executive clemency and the function that executive clemency serves in preventing the violation of his constitutional rights that would arise from continued incarceration of the plaintiff who can make an actual showing of innocence.

7. The Stipulated Order of agreement between the parties granted complete access to all DNA evidence to be subject to DNA testing. Including but not limited to:

(1) The victims underwear, (2) Three Vaginal swabs dried out, (3) Three glass vaginal smear slides dried out. This DNA evidence has never been subjected to DNA analysis and should be immediately released to plaintiff for DNA testing. Paragraph 9 of the March 6 2012 Order guarantee plaintiff an absolute right to additional testing on DNA evidence in the defendants possession. Paragraph 9 of

the March 6, 2012 Order Stated:

> By agreeing to this Order, petitioner is not waiving any State or Federal Statutory or Constitutional Rights to seek additional DNA testing regarding any evidence collected in relation to Tina Wyatt's murder, or any other claim for post-conviction relief.

**See Exhibit A**

8. The Stipulated Order of agreement between the parties protects Mr. Washington's procedural due process rights under the Fourteenth Amendment to test all DNA evidence in the defendants possession. Plaintiff request that an injunction be issued requiring the defendants to release only the untested biological evidence that has been granted for DNA testing.

D. **Factual Background**
**Initial Police Investigation & Forensic** Testing

9. Tina Metzger Wyatt was last seen alive at 11:30 PM on June 29th, 1986, by Milton Washington when she left her motel room No. 72, at the Airport Mortal Inn in Allentown, Pennsylvania. Ms. Wyatt worked as a prostitute at the time of her death. Ms. Wyatt and Mr. Washington shared a room with her two children, and Mr. Washington who was in a romantic relationship with Ms. Wyatt. At 9:30 AM, on June 30, 1986 Ms. Wyatt's body was found by Alan Rex at the rear of a warehouse at 1048 North Irving Street Allentown.

10. She had defensive wounds, trauma to the head, and multiple stab wounds were readily visible. Near her body, investigators found a

blood stained two-by-four block of wood, numerous pieces of blood - stained wood, a small silver folding knife, the victims wallet and comb, and a brand new business card with the name Christopher Christian on it.

11. Ms. Wyatt's brown corduroy jacket was draped over her head, and her pans were draped over her right ankle. Her sandals were found near her body, and she was wearing her bra and sweater, both of which was stained with blood.

12. Crime Scene Officers collated the  wood pieces, the knife, her clothing and personal items for biological and forensic testing. The victims body was removed from the crime scene and delivered to Sacred Heart Hospital at 4th and Chew Street Allentown, PA 18103.

## E. DNA Collected During Autopsy

13. Autopsy begin July 1, 1986, under the supervision of Isidore Mihalakis, a self employed forensic pathologist from Lehigh Valley Hospital Center conducted an autopsy on Ms. Metzger Wyatt and determined that she died from stab wounds, she was stabbed 49 times. The body showed finger pressure marks and defensive wounds on her wrist, forearms, hands and right elbow were also immediately evident, indicating a struggle had occurred. Dr. Mihalakis took gum, throat, vaginal and anal smears and swabs for sperm, acid phosphatates, blood group antigen determination and P-30 protein were performed and surrendered to Detective Barry Giacobbe of the Allentown Police Department.

14. The clothing, jewelry and any personal effects were surrendered

to Detective Giacobbe.

15. Pubic hair combings and scalp hair was surrendered to Detective Giacobbe.

16. Detective Giacobbe clipped the fingernails and retained the clippings. **See Exhibit B**

17. On 7/3/86 Detective Barry Giacobbe from the Allentown Police Department submitted the Autopsy evidence to William Kupstas and Alexander Stirton, Criminologists at the Pennsylvania State Police Regional Laboratory, P.O. Box 2928, Bethlehem, PA 18001, for biological testing.

18. William Kupstas and Alexander Stirton, Criminologist at Pennsylvania State Police Lab in Bethlehem, PA received vaginal, anal, and gum swabs, throat swabs, pubic hairs, and nail clippings that were taken during the autopsy for biological testing. N.T. 9/22/87, 268, 270, 279.

19. The vaginal smear was found to contained acid phosphatase, an enzyme found in semen. and sperm. N.T. 9/22/87,280. There was no testimony regarding serological testing on this sample. The testimony in this case pertaining to the results of the biological testing on the vaginal smear containing acid phosphatase is factually impossible.

20. William Kupstas and Alexander Stirton, Criminologists at the Pennsylvania State Police Lab in Bethlehem, PA never retained the vaginal swabs, gum and throat swabs, anal swabs, vaginal smears, pubic hairs and nail clippings for biological testing. **See Exhibit C Page 12 at paragraph 9.**

-7-

21. William Kupstas and Alexander Stirton, Criminologist at Pennsylvania State Police Lab in Bethlehem PA, dismissed for tampering with evidence in hundreds of cases for the prosecutors in the surrounding Counties and Tri-State Area. Mr. Washington's case was among those case's where the criminologist testified falsely before a jury. Moreover, there fraudulent testimony in Mr. Washington's case violated his Sixth Amendment rights to Confrontation and Compulsory Process, inasmuch as his his rights to Due Process of Law protected by the Fourteenth Amendment.

**PRIOR COUNSEL**

22. Mr. Washington was represented by Frederick J. Lanshe Esq. at trial and by Charles Sieger Jr. Esq. for his Post-Verdict Motions. Mr. Washington was represented by Gavin P. Holihan Esq. on his direct appeal. Mr. Washington represented himself for his Post-Conviction Relief Act Petition and for his Habeas Petition.

**DNA HISTORY**

23. In 2012, Charlotte H. Whitmore Counsel for Mr. Washington and the Commonwealth consented to Post-Conviction DNA Testing of the numerous item of physical evidence related to this case. DAN testing was conducted by Cellmark Forensics beginning February 12, 2009 through early 2015.

24. On October 4, 2013, Cellmark determined that Mr. Washington was excluded as the source of the male DNA profile from the sperm found on the inside crotch area of Ms. Metzger Wyatt's jeans. On October

8, 2015, the PCRA Court issued Rule 907 notice of its intent to dismiss Mr. Washington's PCRA petition seeking a new trial based on the unidentified male DNA Profile obtained from sperm found in the crotch area of Ms. Metzger Wyatt's jeans. Along with the notice the PCRA Court issued an opinion setting forth the grounds for dismissals, specifically; (1) the DNA evidence was not exculpatory, (2) "the evidence presented at trial and considered by the jury was sufficient to support the verdict," so that the new DNA evidence would not change the outcome, and (3) Mr. Washington's contention that Kennedy and Rish's recantation were newly discovered evidence had previously been raised and rejected. Mr. Washington responded to the notice, and the Court dismissed his petition on October 30, 2015. Mr. Washington appealed from the Court's decision. On November 18, 2015, Mr. Washington appealed this decision. On September 12, 2017, The Superior Court of Pennsylvania affirmed the Court's Order. On October 11, 2017, Mr. Washington filed a Petition for Allowance of appeal with the Supreme Court of Pennsylvania. On November 9, 2017, Mr. Washington filed an Application For Remand to "Complete DNA Testing" pursuant to 42 PA.C.S.A. §9543.1 pertaining to Government interference by the Honorable Maria L. Dantos and Senior Deputy District Attorney Heather Gallagher. **See Exhibit D**

On February 21, 2018, the Supreme Court of Pennsylvania denied Mr. Washington's Petition For Allowance Of Appeal and his Application For Remand.

-9-

WASHINGTON REQUESTED THE COURT TO
COMPLETE DNA TESTING

24. On April 3, 2018, Mr. Washington filed a Pro se Petition for Post-Conviction Relief Pursuant to 42 Pa.C.S.A. §9543.1 "To Complete DNA Testing on the withheld Rape Kit." On April 4, 2018, the Court provided Mr. Washington with notice of intention to dismiss the petition and set fourth reasons therein. On April 30, 2018, Mr. Washington Post-Conviction To Complete DNA Testing Pursuant to 42 Pa.C.S.A. §9543.1 was denied.

25.Mr. Washington filed an appeal with the Superior Court of Pennsylvania. The Superior Court of Pennsylvania affirmed the Court's Judgement on January 16, 2019.

26. The Superior Court has Misrepresented the Biological evidence in it's Opinion. The Court assert's that the Appellant's allegation that the Commonwealth withheld evidence of the fact that the vaginal swabs tested positive for the presence of sperm lacks any support in the record. See N.T. 9/22/87 at 279-81

The assertion is factually and biologically incorrect and here's why; (1) The vaginal glass smear are made from the vaginal swabs taken from the victims body, (2) The acid phosphatase test was preformed to determine the presence of sperm, and (3) One of the vaginal swabs tested positive for semen and sperm. 9/22/87 at 284-85. The Superior Court incorrectly concluded that the presence of sperm lacks any support in the record.

**STIPULATED ORDER OF AGREEMENT BETWEEN
BOTH PARTIES REQUIRES THE RELEASE OF
UNTESTED DNA**

28. The Stipulated Order singed by both parties on February 29, 2012, pursuant to 42 Pa.C.S.A. §9543.1, and Pa.R.Crim.P. 903, protects plaintiff state and federal constitutional rights, guarantying his procedural due process rights under the Fourteenth Amendment will not be violated by denying access or release of any physical evidence for DNA testing. Under the Court's Stipulated Order plaintiff has a constitutional right to seek additional DNA testing regarding any evidence collected in relation to Tina Metzger Wyatt's murder, or any other claim for Post-Conviction Relief. Stipulated Order at Page 4 Paragrapher 9. **See Exhibit E**

29. Plaintiff request this Honorable Court to enter an Injunction Order Ordering the District Attorney to release the following items for DNA testing:

   a. Ordering the District Attorney to take all steps reasonably necessary to preserve the physical evidence from the victim's body, including; (1)Three vaginal swabs dried out, (2) Three vaginal glass smears dried out, (3) The victims fingernail clippings, (4) The victims underwear, and (5) One Business Card with the name of Christopher Christian on it, found near the victims body.

   b. Ordering the District Attorney to produce to plaintiff the evidence listed in paragrapher 29(a) above.

   c. Ordering the District Attorney to cooperate with plaintiff in selecting a qualified laboratory for testing the evidence or in the alternative, Ordering the evidence to be tested at a specific qualified laboratory chosen by the Court.

d. Reasonable Attorneys' fees and costs; and

e. Any other relief that the Court deems just and proper.

30. The above biological evidence taken from the victims body was removed from the Stipulated Order. The evidence was considered lost or misplaced during the initial DNA testing by Orchid Cellmark, 13988 Diplomat Drive, Suit 100 Dallas, TX 75234 from 2/28/2012 to 1/30,/2015. **See Exhibit F page 1 paragraph 3**

31. Plaintiff Attorney Charlotte Whitmore, Innocence Project Staff Attorney and the Clerk of Criminal Court, of Lehigh County found a second box of evidence and failed to thoroughly search the entire box for the missing biological evidence. The Assistant District Attorney Heather Gallagher was notified that a second box of evidence had been found.

32. Again, plaintiff request this Honorable Court to enter an Injunction Order Ordering the District Attorney to release the Second Box of Evidence and the item's therein for DNA Testing. **See Exhibit C Page 12 Paragraph 9**

**DNA EVIDENCE TESTED BY ORCHID CELLMARK FORENSIC LAB EXCLUDED TWO OF THE THREE SUSPECTS FROM THE CRIME SCENE**

33. From February 28, 2012 to January 28, 2015, Orchid Cellmark Forensic Lab tested the items of evidence collected from the crime scene containing DNA evidence that excluded Mrs. Metzger Wyatt's ex-husband Mr. Karry Wyatt and her boyfriend Mr. Milton Washington as the perpetrators of the crime;

(1) Numerous pieces of wood;

(2) The Silver Pocketknife;

(3) The victim's clothing, including her bra, seater, pans jacket, underwear, and sandal;

(4) The victim's personal items that were found around her body, including her comb, wallet, and the business card of Chirstopher Christian.

34. Mr. Washington seeks an Injunction Order Ordering the District Attorney of Lehigh County to release the untested biological evidence that has not been subjected to DNA testing; (1) The victim's underwear that has the same DNA value as the vaginal swabs. (2) Three vaginal swabs dried out, (3) Three vaginal glass smear slides dried out, (4) The victims fingernails clippings, and (5) Christopher Christian Business card to be subject to touch DNA. The attach upon Ms. Metzger Wyatt was a violent and intimate attach, and DNA testing will establish Mr. Washington's actual innocence. DNA testing has been preformed on the following crime scene items, and Mr. Washington was excluded.

(1) **Wood Pieces:** It was highly probable that the true perpetrator left biological material on the wood pieces due to the rough surface of the wood and the aggressive way the wood was gripped and used to repeatedly strict the victim. N.T. 9/23/87, 551. Mr. Washington requested DNA testing of any blood on the wood pieces because it was highly likely that the perpetrator bled during the commission of the crime.

Prior DNA testing by Orchid Cellmark Forensic Lab on May 3, 2012, determined that Mr. Washington's and the victims ex-husband Karry Wyatt DNA was not on the pieces of wood from crime scene.

(2) **The Silver Pocketknife:** Dr. Mihalakis testified that the knife found at the scene was consistent with causing the fatal injures. N.T. 9/23/87, 552-554. Since the perpetrator of the crime likely used this knife to kill the victim. It was highly probable that some of the perpetrator's skin cell will be on the knife and will be identifiable using DNA testing. In addition, there was human blood of an "undetermined" type found on the handle of the knife. Mr. Washington requested DNA testing of any blood found on the knife, because the perpetrator may have cut himself in the course of the stabbing the victim 49 times.

Prior DNA testing was performed by Orchid Cellmark Forensics Lab. On May 3, 2012, determined that Mr. Washington's and the victims ex-husband Kerry Wyatt DNA was not on the knife.

(3) **Corduroy Blue Jeans: Because** Ms. Wyatt was a prostitute, she may have had intercourse with the perpetrator shortly before her death who may have been her killer. It is highly probable that the perpetrator's seminal fluid transferred from Ms. Wyatt's body to the Crotch area of her underwear to crotch area of her jeans when redressing herself. When Ms. Metzger Wyatt's body was found, she was naked from the waist down, her jacket was above her head, her jeans were draped by her right ankle, and she had defensive wounds. N.T. 9/21/87, 68 (Detective Suppan's testimony), N.T. 9/23/87, 560 (Dr. Mihalakis's testimony).

Prior DNA testing was performed by Orchid Cellmark Forensics Lab. On October 3, 2013, determined that Milton Washington and the victims ex-husband Mr. Kerry Wyatt was excluded as the source of the male DNA profile from the sperm found on the inside crotch area of Ms. Metzger Wyatt's Jeans.

-14-

(4) **Victims Underwear:** The underwear of Ms. Metzger Wyatt was wearing the night of her murder June 29, 1986 was not tested for seminal matters (combination of sperm cells and seminal fluid) to make a comparison with sperm found in the crotch area of Ms. Metzger Wyatt's jeans. However, a unidentified male DNA profiles was developed from the sperm found in the crotch area of Ms. Metzger Wyatt's blue corduroy jeans.

35. On March 4, 2014 The Pennsylvania State Police, Forensic DNA Division, Greensbrug, PA 15601 received by FedEx Mail all DNA extracted cuts from the crotch area of the victims blue corduroy Jeans from Orchid Cellmark Forensic Lab. On June 30, 2014 the PSP Crime Laboratory conducted a Short Tandem Repeat (STR) test and the Y-STR testing, the type of testing done to develop the profiles here. Plaintiff present the following unidentified male profiles developed by PSP Crime Laboratory:

Page 2 Paragraph 3: Q1  A DNA Profile Has been Obtained From The Mixture Of (2) Individuals: Profile No. 1.

Page 3 Paragraph 4: Q2  A DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 2.

Page 3 Paragraph 7: Q6  A DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 3.

Page 3 Paragraph 8: Q7F  A DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 4.

Page 4 Paragraph 9: Q7M  A DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 5.

Page 4 Paragraph 10: Q8F  A DNA Profile Has Been Obtained From The Mixture Of (3) Individuals: Profile No. 6.

Page 4 Paragraph 11: Q8M   DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 7.

Page 6 Paragraph 15: Q7M And Q8M, A DNA Profile Has Been Obtained From The Mixture Of (2) Individuals: Profile No. 8. See Exhibit G

36. The PSP Crime Laboratory DNA Analysis' determined that Ms. Metzger Wyatt did have consensual sex with (17) unidentified male individuals on June 29, 1986 before her death. The Semen/spermatozoa extracted from the crotch areas of the jeans was a mixture of semen/spermatozoa from (17) unidentified male individuals. The mixture of male DNA extracted from crotch area of the jean was isolated and separated developing (8) DNA Profiles from (17) unidentified male individuals.

37. On April 10, 2014 the Pennsylvania State Police uploaded only (1) out of the (8) DNA profiles into CODIS, but it did not "hit" to the profile of an individual in the DNA databanks and thus did not "establish" any investigative leads. Weekly searches are conducted as new DNA profiles are constantly being added to CODIS. To date, Mr. Washington has not been informed of any investigative leads developed from the unidentified DNA profile, inasmuch as the remaining (7) DNA profiles of unidentified male individuals that has not been add to CODIS.

38. The PSP Crime laboratory excluded Mr. Washington and the victim's ex-husband Mr. Kerry Wyatt from the semen/spermatozoa DNA mixture extracted from crotch area of the victims jeans. The third suspect in this case has not been excluded as the major contributor to the semen/spermatozoa DNA mixture. Moreover, Mr. Christopher Christian is the third suspect and his business card ties him to the crime scene.

-16-

Christopher Christian Business Card
Ties Him To The Crime Scene And DNA
Testing Of Ms. Wyatt's Underwear
Will Tie Him To Her Murder

38. Ms. Metzger Wyatt worked as a prostitute and she had a large clientele of customers, and any one of them could have murder her on early morning of June 30, 1986. Mr. Christian was Mrs. Metzger Wyatt's main source of income, and therefore it is highly unlikely he did not engage in consensual sex with the victim on early morning of June 30, 1986. However, his business card was found at he crime scene. Here, there can be no innocent explanation as to why his business card is found at the crime scene.

39. Mr. Christian testified at trial that he gave Mrs. Metzger Wyatt's his business card, and on the reverse side of the card he wrote a number that rings in his office area, which is the phone that they answer after 5:00 o'clock on the weekends. Mr. Christian testified that the business card is similar to the one he gave her that night one week before her death. Moreover, that the business card marked as Commonwealth Exhibit 35 is not the card he gave her that night. Inasmuch, as it is exactly like it on the front at least. N.T. 9/23/87 N.T. 312, 313.

40. Mr. Christopher Christian alleged that the **Business Card** found at the crime scene was not his card, who else business card could it have been ("other than his own"). Mr. Christian business card requires The Lehigh County District Office and District Attorney James B. Martin to release the victims underwear to be subject to DNA Testing to exclude Christopher Christian as the perpetrator. The victims underwear has the same DNA value as the three vaginal swabs,

-17-

three vaginal glass smear slides collected during the victims autopsy.

41. No biological evidence from Mr. Washington or the victims ex-husband Mr. Kerry Wyatt was present but irrefutably pointing to a biological mixture of semen of at least 17 male individuals found in the crotch area of the victims jeans. Mr. Christopher Christian business card has tied him to the crime scene and moreover to Ms. Metzger Wyatt's murder. Mr. Christian testified that he had no sexual contact with Ms. Metzger Wyatt for a period one week. Therefore, his DNA should not be in the crotch area of Ms. Metzger Wyatt's underwear or in the biological mixture of semen/spermatozoa of at least 17 unidentified male individuals. Mr. Christian is required to submit a blood simple or a buccal swabs simple to the PSP Crime Lab by consent or by Court Order. Further, it is possible that the true perpetrator would be compelled to confess to Ms. Metzger Wyatt's murder when confronted with compelling DNA evidence establishing his guilt.

## CONCLUSION

42. Plaintiff requests this Honorable Court to enter an injunction Order Ordering the District Attorney's Office of Lehigh County, District Attorney James B. Martin to release the victims underwear that has the same DNA value as the vaginal swabs collected during the victims autopsy. Inasmuch as releasing the missing biological evidence collected during the victims autopsy, found in a second box

at Lehigh County Courthouse. Plaintiff seeks an injunction Order Ordering District Attorney James B. Martin to release the following items for DNA testing;

a. Ordering the District Attorney to take all steps reasonably necessary to preserve the physical evidence of the victims autopsy evidence found in a second box at the Courthouse which includes; (1) Three vaginal swabs dried out, (2) Three vaginal glass smear slides dried out, (3) The victims fingernail clippings, (4) One Business Card with the name of Christopher Christian on it found near the victims body, and (5) The victims underwear that should have been subject to DNA testing along with the crime scene evidence.

b. Ordering the District Attorney James B. Martin to produce to the plaintiff the evidence listed in paragraph 42(a) above.

c. Ordering the District Attorney to cooperate with plaintiff in selecting a qualified laboratory for the evidence or in the alternative, ordering the evidence to be tested at a specific qualified laboratory chosen by the Court.

d. Reason Attorney's fees and coasts; and

e. Any other relief that this Court deems just and proper.


43. The plaintiff in this case cannot prove his actual innocence without DNA testing of the biological evidence contained in the victims underwear. DNA testing of this evidence would produce exculpatory results identifying the very last person the victim was with. The state PCRA Court denied plaintiff Motion For Post Conviction DNA Testing preventing the plaintiff from demonstrating

-19-

his actual innocence. The defendants have violated and continues to violate Mr. Washington's constitutional right of access to courts by denying plaintiff access to potentially exculpatory DNA evidence. Requiring the plaintiff to do the impossible, to prove that DNA testing of the victims underwear and the vaginal swabs collected during the victims autopsy would produce exculpatory results without access to the very evidence he seeks to test. And in contravention of an express statute 42 C.S. §9543.1(c)(1)-(3) presumption that DNA test would indeed product exculpatory results. This plaintiff has been denied the opportunity promised by 42 Pa.C.S. §9543.1(c)(1)-(3) to demonstrate his actual innocence.

   **Wherefore,** your plaintiff requests this Honorable Court to enter an Injunction Order against the defendants, Ordering the defendants of Lehigh County District Attorney's Office and James B. Martin Esq. to produce to plaintiff the evidence listed in paragrapher 42.(a) above.

                              Respectfully Submitted,

                              /s/ _Milton Washington_
                              Milton Washington, Pro se  #S2081
                              SCI Dallas A Annex 20
                              1000 Follies Road-Drawer K
                              Dallas, PA 18612-0286

Dated _January 10,_     2021

EXHIBIT A

STIPULATED ORDER FOR DNA TESTING
PURSUANT TO 42 Pa.C.S.A. §19543.1

**JAMES B. MARTIN**
District Attorney



## OFFICE OF THE DISTRICT ATTORNEY
### LEHIGH COUNTY COURTHOUSE
455 WEST HAMILTON STREET
ALLENTOWN, PENNSYLVANIA 18101-1614
PHONE (610) 782-3100    FAX (610) 820-3323

## FAX COVER SHEET

**DATE:**        March 6, 2012

**TO:**           Charlotte Whitmore
                  Staff Attorney
                  The Pennsylvania Innocence Project

**FAX #:**       (215) 204-0199

**FROM:**        Heather F. Gallagher
                 Sr. Deputy District Attorney

NUMBER OF PAGES (INCLUDING COVER SHEET):   5

**RE:    COMMONWEALT OF PA v. MILTON WASHINGTON
         CP-39-CR-0000515-1987**

**Attached is the Stipulated Order signed by the Honorable Maria L. Dantos, Judge, in
the above reference criminal case.**

/mcr

CONFIDENTIALITY NOTICE: The information transmitted is for the sole use of the intended recipient(s) and may
contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution of this
information other than by the intended recipient is prohibited. If you received this message in error, please contact the
sender by phone and destroy all copies of the original message.

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :

             vs.                       :     No. CP-39-CR-0000515-1987

                                    :

MILTON WASHINGTON                    :
      Defendant.                     :

### STIPULATED ORDER

AND NOW, this 29th day of February, 2012, pursuant to the agreement of the parties

and the authority of the Court under 42 Pa.C.S.A. § 9543.1 and Pa.R.Crim.P. 902, the Court

hereby orders as follow:

1.  DNA testing shall be conducted on all evidence retained by the Clerk of the Criminal

    Courts in this matter.

2.  Counsel for Mr. Washington has confirmed that the Clerk of the Criminal Court, Lehigh

    county, has retained the following items of evidence in its possession:

    a.  numerous pieces of wood;

    b.  a silver pocketknife;

    c.  the victim's clothing, including her bra, sweater, pants, jacket, sandals, and

        underwear; and

    d.  the victim's personal items, including her wallet, comb, and the contents of her

        wallet.

3.  Within 60 days of this Order, the Pennsylvania State Police Crime Laboratory at

    Bethlehem, PA, the Allentown Police Department and the Lehigh County Office of the

    Coroner shall inform the Court of its efforts to locate any documentation and material

regarding the physical evidence collected and/or received in reference to the murder of Tina Marie Metzger Wyatt on June 30, 1986 in Allentown, PA, including but not limited to the evidence collected during the victim's autopsy: gum, throat, anal and vaginal smears and swabs, and the victim's fingernail clippings. That information shall be forwarded to the undersigned attorneys for Mr. Washington and the Commonwealth.

4. Within 60 days of this Order the Pennsylvania State Police Crime Laboratory at Bethlehem, PA and the Allentown Police Department shall inform the Court of any evidence located and its location. If any evidence was destroyed or otherwise disposed, the aforementioned shall provide the Court with any information [and/or documentation] it has regarding said destruction or disposition. Information regarding retention and/or other disposition shall be forwarded to the undersigned attorneys for Mr. Washington and the Commonwealth.

5. The parties agree to DNA testing on any evidence retained by the aforementioned.

6. Within 60 days of the date of entry of the Order, one or more representatives of the Commonwealth will properly package the evidence so it is not damaged and cannot be contaminated during transit. Once properly packaged, the representative shall transmit the items by Federal Express overnight delivery to Orchid Cellmark Forensic Lab, 13988 Diplomat Drive, Suite 100, Farmers Branch, TX 75234. Shipping costs will be paid by the Pennsylvania Innocence Project.

7. Upon receipt of items, Orchid Cellmark shall inventory, document and photograph the items prior to testing. Testing shall proceed as follows:

   a. Orchid Cellmark shall test the evidence to determine if there are any interpretable DNA profile(s) foreign to the victim, Tina Metzger Wyatt. During testing, Orchid Cellmark shall consume no more of the item than is necessary to obtain result. If

2

Orchid Cellmark determines its testing will consume an entire sample, Orchid Cellmark shall contact District Attorney James B. Martin, Lehigh County District Attorney's Office, 455 W. Hamilton Street, Allentown, PA 18101, 610-782-3100 (office), 610-820-3323 (fax) and Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19112, 215-204-4255 (office), 215-204-0199 (fax), to obtain the parties' consent prior to testing.

b. If Orchid Cellmark obtains an unknown male DNA profile or profiles from the evidence, it shall perform another round of tests. Mr. Washington's reference samples shall be collected by the Commonwealth and submitted (using buccal swabs) to Orchid Cellmark for comparison to the DNA profile(s). Orchid Cellmark shall subject defendant's reference samples to DNA testing and comparison against any DNA recovered from the evidence tested.

c. Upon completion of DNA testing, Orchid Cellmark shall publish its findings in a report which shall be transmitted to the undersigned attorneys for Mr. Washington and the Commonwealth.

d. Pennsylvania State Police shall compare any unidentified male DNA profile(s) obtained from the evidence tested by Orchid Cellmark to the profiles stored in state and federal forensic DNA databanks (CODIS).

8. All evidence not consumed during testing shall be returned to the original submitting agency. If DNA testing produces inconclusive or uninterpretable results, the Commonwealth shall preserve the evidence as long as defendant remains incarcerated or under supervision for his conviction in the instant case.

3

9. By agreeing to this Order, petitioner is not waiving any state or federal statutory or constitutional right to seek additional DNA testing regarding any evidence collected in relation to Tina Metzger Wyatt's murder, or any other claims for post-conviction relief.

10. Either The Innocence Project in New York or the Pennsylvania Innocence Project shall pay for all DNA testing set forth herein. All bills for DNA testing shall be forwarded to Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19122.

BY THE COURT:

_____ , J.

4

Respectfully submitted,

_____
Charlotte H. Whitmore, Esquire
The Pennsylvania Innocence Project
1719 N. Broad St.
Philadelphia PA 19122
(215) 204-4255

_____
Heather Gallagher, Esquire
Deputy District Attorney
Lehigh County District Attorney's Office
455 W. Hamilton Street
Allentown, PA 18101
(610) 782-3104

DATE: __8/15/12__

DATE: __8/28/12__

5

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :
                                      :

              **vs.**                 :       No. CP-39-CR-0000515-1987

                                        :

MILTON WASHINGTON                    :
      Defendant.                         :

### ORDER

      AND NOW, this 28th day of August , 2012, pursuant to the agreement of

the parties and the authority of the Court under 42 Pa.C.S.A. § 9543.1 and Pa.R.Crim.P. 902, the

attached "Stipulation of the Parties to Terms and Conditions of DNA Testing," is made an

ORDER of the Court.

                        BY THE COURT:

                        Maria L. Dantos, J.

2012 AUG 28 P 3:43
CLERK OF COURTS
CRIMINAL-JUVENILE
LEHIGH COUNTY, PA
FILED

6

RECEIVED SEP 0 4 2012

EXHIBIT B

AUTOPSY REPORT

# AUTOPSY REPORT - Continued

Name WYATT, Tina ............................... Autopsy No. C-86-115 .. Page 13 .........

MISCELLANEOUS:

Present at the autopsy in addition to this prosector were Mr. Robert Weir, Lehigh County Coroner, Mr. Wayne Snyder, Deputy Lehigh County Coroner, Detective Barry Giacobbe, Allentown Police Department, Sargeant Richard Fenstermacher, Allentown Police Department, and Rudy Ellow, autopsy assistant.

Photographs were taken by Sargeant Fenstermacher who also took fingerprints of the body.

The clothing, jewelry and any personal effects were surrendered to Detective Jiacobbe.

Gum, throat, vaginal and anal smears and swabs for sperm, acid phosphatates, blood group antigen determination and P-30 protein are performed and surrendered to Detective Jiacobbe.

Pubic hair and scalp hair is surrendered to Detective Jiacobbe.

Blood from the left chest, urine, bile, gastric content, brain, liver and kidney are retained for pertinent toxicologic tests.

Vitreous humor is retained for electrolyte determination.

Detective Giacobbe clipped the fingernails and retained the clippings.

The antecubital fossae bilaterally are dissected and fresh/recent hemorrhages are noted in the right antecubital fossa.  In the left antecubital fossa, some older, resolved, soft tissue hemorrhages are also noted.  Both are dissected and retained for pertinent toxicologic tests.

Specimens are retained for microscopic examination as necessary.

Based on the statements of Deputy Coroner Snyder, the body was fully rigid when first seen at 11:00 A.M., 6/30/86.  A core temperature at 11:39 A.M. was found to be 26 degrees Celsius.  Based on the above findings, the estimated time of death is approximately eleven hours prior to 11:30 A.M., 6/30/86.

The hourly temperatures of 6/29 and 6/30/86 are charted by Deputy Snyder and recorded by him and photographed by Sargeant Fenstermacher.

EXHIBIT C

POST-CONVICTION COMMENTS ASSERTING THAT
THE MISSING AUTOPSY EVIDENCE WAS FOUND

CRAIG M. COOLEY
Illinois Bar #6282688
The Innocence Project
100 Fifth Avenue, 3rd Floor
New York, New York 10011
Tel. 212.364.5361

CHARLOTTE HALDEMAN WHITMORE
Pennsylvania Bar # 208724
The Pennsylvania Innocence Project
at Temple University Beasley School of Law
1719 N. Broad St.
Philadelphia, Pa 19122
Tel. 215-204-4255

*[handwritten notes in right margin: Washington Saw Wyatt at police station w/ cat + told police tht he was cat at work]*

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,      :
                                    :
                        Respondent, :
                                    :
              v.                    :      No.    CP-39-CR-0000515-1987
                                    :
MILTON WASHINGTON,                  :
                                    :
                        Petitioner. :
                                    :
                                    :

## PETITION FOR POST-CONVICTION DNA TESTING PURSUANT TO 42 Pa. C.S. § 9543.1.

TO THE HONORABLE JUDGE, PRESIDING IN THE COURT OF COMMON PLEAS CRIMINAL
TRIAL DIVISION FOR THE COUNTY OF LEHIGH:

Petitioner, Milton Washington, through his newly-retained *pro bono* attorneys, Charlotte

Haldeman Whitmore and Craig M. Cooley, files this *Petition for Post-Conviction DNA Testing*

*Pursuant to 42 Pa. C.S. § 9543.1.*  Mr. Washington seeks post-conviction DNA testing, or such relief as

is just and proper, and in support thereof represents:

1

# INTRODUCTION

1.     Milton Washington is currently serving a life sentence for a murder he has always denied committing.  His conviction rests upon the testimony of three jailhouse informants, two of whom recanted their testimony implicating Mr. Washington after Mr. Washington's trial.  No physical evidence connected Mr. Washington to the murder, although a significant amount of biological evidence was collected from the crime scene.  Mr. Washington seeks now to have blood and other physical evidence submitted for DNA testing to establish his actual innocence of this crime.

2.     Decedent, Tina Metzger Wyatt, was last seen alive on Sunday, June 29, 1986.  Her body was found on Monday, June 30, 1986, in a grassy area behind a warehouse in Allentown, Pennsylvania. N.T. 9/21/87, 49.[1]  Her body was found partially clothed, with her pants pulled down and her jacket draped over her head, and was surrounded by pieces of blood-stained wood.  N.T. 9/21/87, 54, 68-70. Nearby, investigators found a silver pocket knife.  N.T. 9/21/87, 55, 68-70, 72.

3.     Milton Washington was in a romantic relationship with Ms. Metzger Wyatt at the time of her death.  Although he was arrested for a parole violation in July 1986, Mr. Washington was not charged with her murder until January 8, 1987.

4.     The Commonwealth sought the death penalty against Mr. Washington.

5.     Trial took place in the Lehigh County Court of Common Pleas before the Honorable Maxwell E. Davison from September 21, 1987, to September 28, 1987.

6.     On September 29, 1987, a jury found Milton Washington guilty of first-degree murder.

7.     The jury was unable to reach a unanimous decision as to the penalty and life imprisonment was imposed.  Judge Davison sentenced Mr. Washington to life in prison on November 7, 1987.

---

[1] Unless otherwise noted, the initials "N.T." followed by date and page number refer to the trial in this matter, held from September 29, 1987 to September 28, 1987, presided by the Honorable Maxwell E. Davison in the Lehigh County Court of Common Pleas.

8.    Mr. Washington has steadfastly maintained his innocence since his arrest.  He has never made any statements accepting responsibility for the murder.

**PRIOR COUNSEL**

9.    Mr. Washington was represented by Frederick Lanshe at trial and by Charles Sieger, Jr., for his post-verdict motions.  Mr. Washington was represented by Gavin P. Holihan on his direct appeal.  Mr. Washington represented himself for his Post-Conviction Relief Act Petitions and for his Habeas Corpus Petition.

**PROCEDURAL HISTORY**

10.    After conviction, Mr. Washington took the following steps to obtain relief from his conviction and sentence:

(1)    **Post-Verdict Motions:** On January 19, 1988, Mr. Washington filed a post-verdict motion for a new trial and arrest of judgment, which was denied on May 30, 1989, by the Honorable Maxwell E. Davison and the Honorable Carol K. McGinley.  On October 10, 1990, Mr. Washington filed a Petition for a New Trial based on After Discovered Evidence, which was denied on December 19, 1991 by the Honorable John E. Backenstoe for failure to present any admissible evidence.

(2)    **Direct Appeal**: Mr. Washington appealed on September 30, 1999.[2]  The Superior Court affirmed Mr. Washington's judgment of sentence on November 16, 2000, and the Pennsylvania Supreme Court quashed his petition for Allowance of Appeal as untimely on January 12, 2001.

(3)    ***First PCRA Petition:*** On November 19, 2001, Mr. Washington filed a *pro se* Petition

---

[2]    Mr. Washington filed a notice of appeal on June 27, 1989, which was denied on July 1, 1992, because of counsel's failure to file a brief.  Mr. Washington's appeal rights were reinstated on June 30, 1997 and he appealed on July 16, 1997, but this was again dismissed without prejudice for failure to file a brief on January 27, 1998.  Mr. Washington's appeal rights were reinstated again on July 20, 1999.

under Pennsylvania's Post Conviction Relief Act. Judge McGinley denied this Petition on July 17, 2002, and the Superior Court affirmed on May 9, 2003. The Pennsylvania Supreme Court denied Mr. Washington's Petition for *Allocatur* on October 7, 2003.

(4)     **First Habeas Corpus Petition**: On June 15, 2004, Mr. Washington filed a *pro se* petition for writ of habeas corpus. On March 8, 2005, Magistrate Judge Peter B. Scuderi issued a Report and Recommendation recommending that Mr. Washington's petition be dismissed as untimely. District Court Judge John P. Fullam dismissed the petition on April 7, 2005.

(5)     **Second PCRA Petition**: On June 27, 2006, Mr. Washington filed two *pro se* Petitions based on Actual Innocence and Prosecutorial Misconduct. These motions were treated as a PCRA petition and were denied as untimely by Judge McGinley on October 17, 2006. Mr. Washington appealed to the Superior Court on October 30, 2006, but his appeal was denied on August 16, 2007.

(6)     **Second Habeas Corpus Petition**: On September 21, 2007, Mr. Washington filed a *pro se* petition for writ of habeas corpus. Judge Fullam denied this petition for lack of jurisdiction on October 23, 2007, because Mr. Washington did not obtain leave from the Court of Appeals to file a successive petition.

(7)     **Third PCRA Petition**: On June 11, 2008, Mr. Washington filed a *pro se* Motion for a New Trial based on After Discovered Evidence. The Court treated this as a third Motion for Post Conviction Collateral Relief, which was denied as untimely by the Honorable Maria L. Dantos on September 30, 2008. Mr. Washington appealed on October 9, 2008 and the Superior Court affirmed on March 4, 2009.

## JURISDICTION AND RELIEF SOUGHT

11.     Milton Washington is currently incarcerated at Pennsylvania State Correctional Institution at Graterford, Route 29, Graterford, Pennsylvania, 19426-0246 (Inmate # AS2081), serving

the prison sentence imposed as a result of the conviction at issue here.

12.   Mr. Washington —as he has done since his arrest on this matter—maintains his absolute

innocence.

13.   In this instant Petition, Mr. Washington requests post-conviction DNA testing of any

physical evidence which still exists and is in control of the Commonwealth. See 42 Pa. C.S. § 9543.1.


**FACTUAL BACKGROUND**

1.   The Commonwealth's case at trial was based primarily on Washington's inconsistent

statements to investigators, his relationship with the victim, and the testimony of four witnesses,

Benjamin Kennedy, Anthony Rish, Andrew Gratt (or Grate), and Juan Cruz.  Each of these four

witnesses received leniency on their own pending charges in exchange for this testimony. Shortly after

trial, Kennedy and Rish, respectively, recanted their testimony in written affidavits.

2.   Ms. Metzger Wyatt was last seen the night of June 29, 1986, when she left the Airport

Inn motel room that she and Mr. Washington shared with her two children. N.T. 9/22/87, 480; N.T.

9/25/87, 963-64.  Ms. Metzger Wyatt was working as a prostitute at the time of her death and Mr.

Washington was allegedly her pimp. N.T. 9/25/87, 1032.

3.   Washington reported Ms. Metzger Wyatt missing at 8:12 a.m. on June 30, 1986.  N.T.

9/21/87, 117; N.T. 9/25/87, 980.

4.   The following morning, June 30, 1986, Ms. Metzger Wyatt's body was discovered at the

rear of a warehouse in Allentown, Pennsylvania. N.T. 9/21/87, 28.  Defensive wounds, trauma to the

head, and multiple stab wounds were readily visible. N.T. 9/30/87, 1380.  Near the body investigators

found a blood-stained two-by-four block of wood, numerous pieces of blood-stained wood[3], a small

---

[3] Four of these pieces of wood, Commonwealth Exhibits 3, 4, 5, and 6, were "reconstructed" by the state police lab and held
together by rubber bands to form one piece of wood. N.T. 9/21/87, 64-65.

silver folding knife, the victim's wallet and comb, and a business card with the name Christopher

Christian on it. N.T. 9/21/87, 53-55; N.T. 9/22/87, 279. Ms. Metzger Wyatt's brown corduroy jacket

was draped over her head and her pants were draped over her right ankle. N.T. 9/21/87, 68-69. Her

sandals were near her body and she was wearing her bra and sweater, both of which were stained with

blood. N.T. 9/21/87, 69-70.

5.      Allentown police collected the wood pieces, the knife, the clothes, and personal items.

N.T. 9/23/87, 644-45.

6.      No physical evidence linked Washington to the victim's death or the crime scene.

7.      On July 1, 1986, Dr. Isidore Mihalakis, a self-employed forensic pathologist from the

Lehigh Valley Hospital Center conducted an autopsy on Ms. Metzger Wyatt and determined that she

died from stab wounds. N.T. 9/23/87, 521, 524, 549. The victim was stabbed 49 times and these

wounds perforated her voice box, both lungs, sac surrounding the heart, pulmonary artery, right hemi-

diaphragm, liver, intestines, stomach, rectum, and kidney. N.T. 9/23/87, 537, 540-46.  The victim also

sustained blunt force injuries to the forehead, face, side of head, neck, shoulder, back, buttocks, left

calf, arm, chest, hand, hip, and abdomen.  N.T. 9/23/87, 531-539, 547.  The body showed finger

pressure marks, abrasions, blunt internal injuries, bruising, a broken left radius, fractured rib, torn ear

lobe, and a skull fracture. N.T. 9/23/87, 531, 538, 540, 545.  Defensive wounds were evident on her

wrist, forearms, hands, and right elbow.  N.T. 9/23/87, 547-48.

*dismissed for tampering of evidence* [handwritten annotation]

8.      William Kupstas and Alexander Stirton, criminologists at the Pennsylvania State Police

Lab in Bethlehem received vaginal, anal, and gum swabs and smears, throat swabs, pubic hairs, and

nail clippings that were taken during the autopsy for biological testing. N.T. 9/22/87, 268, 270, 279.

The criminologists also received blood samples and other evidence collected at the crime scene,

including the wood pieces, the knife, and the victim's clothing. N.T. 9/22/87, 279.

9.      Basic serology results indicated that some blood samples taken from the wood pieces

6

were Type A.  N.T. 9/22/87, 271.  Ms. Metzger Wyatt's blood type is A and Washington is Type B.  N.T. 9/22/87, 270-71.  The victim's jeans and jacket were stained with Type A blood.  N.T. 9/22/87, 280. There was also human blood of an "undetermined" type on the wood pieces and human blood of an "undetermined" type on the handle of the knife. N.T. 9/22/87, 271, 273, 283.  Ms. Metzger Wyatt's sweater and bra were stained with human blood of an undetermined type. N.T. 9/22/87, 275-76.

10.     The vaginal smear was found to contain acid phosphatase, an enzyme found in semen, and sperm. N.T. 9/22/87, 280.  There was no testimony regarding serological testing on this sample.

11.     Shortly after the victim was discovered the morning of June 30, 1986, investigators questioned Mr. Washington.  Mr. Washington cooperated fully. N.T. 9/22/87, 490.

12.     On July 1, and July 2, 1986, Washington again met voluntarily with police and gave 3 interviews, 2 of which were initiated by Washington himself. N.T. 9/21/87, 9/23/87, 9/25/87, 159, 716, 987.

13.     On July 4, 1986, Washington was arrested for an unrelated parole violation.  N.T. 9/25/87, 949.

14.     Mr. Washington was not charged with criminal homicide until January 8, 1987, more than six months after Ms. Metzger Wyatt's death. N.T. 9/25/87, 949-50.

15.     The Commonwealth's theory at trial was that Mr. Washington beat Ms. Metzger Wyatt with a large piece of wood and then stabbed her multiple times because he was upset that she did not want to work as a prostitute anymore. N.T. 9/21/87, 22-23.

16.     Although the Commonwealth claimed that Mr. Washington bludgeoned Ms. Metzger Wyatt in the head and then stabbed her 49 times, no blood evidence was found on Washington or in his motel room. N.T. 9/21/87, 102-03; N.T. 9/22/87, 270-75, 280, 284, 289.

17.     At trial, the Commonwealth highlighted the inconsistencies in the numerous statements that Washington gave to the police, namely, the time he last saw the victim, the clothes the victim wore

7

the night she was murdered, and whether or not Washington and Ms. Metzger Wyatt's children ate ice

cream that night. N.T. 9/23/87, 651; N.T. 9/25/87, 1005, 1008, 1015, 1021.

18.      The Commonwealth also presented the testimony of Juan Cruz, whom police originally

suspected of murdering Ms. Metzger Wyatt. N.T. 9/21/87, 219. Cruz testified that he was staying at

the Airport Inn on the night of the murder.[4] N.T. 9/21/87, 228. Cruz testified that the weekend Ms.

Metzger Wyatt was killed, he saw Washington and Metzger Wyatt fighting, saw Washington slap her,

and saw Washington chase her in the direction where her body was found. N.T. 9/21/87, 199-203, 248.

Cruz also testified that on Sunday[5] afternoon, the day after the fight but before the murder, Washington

told him he did "something to his lady." N.T. 9/21/87, 203-204.

19.      In exchange for Cruz's testimony against Mr. Washington, the Commonwealth informed

the Judge who was sentencing Cruz for a drug conviction about Cruz's assistance in Washington's case

and the Commonwealth also filed a motion for reduction of Cruz's bail. N.T. 9/21/87, 188-89.

20.      The Commonwealth also presented the testimony of Benjamin Kennedy, a long-time

friend of Washington. N.T. 9/22/87, 376. At trial, Kennedy testified that he shared a cell with

Washington and Washington told Kennedy that he "accident[ally]" killed Ms. Metzger Wyatt during a

fight. N.T. 9/22/87, 376, 385. Washington allegedly asked Kennedy to tell the police that Juan Cruz

killed Ms. Metzger Wyatt and that Washington was at Kennedy's house the night she was killed. N.T.

9/22/87, 369, 375. Kennedy admitted that he decided to testify against Washington because he had

heard rumors that Washington agreed to "shut up" his wife, who was planning on testifying in an

unrelated case. N.T. 9/22/87, 378. In exchange for testifying against Washington, Kennedy's bail was

reduced and he was released. N.T. 9/22/87, 366.

---

[4] At trial Cruz's girlfriend testified that she and Cruz had not stayed at the Airport Inn the weekend of the murder.
Further, neither Cruz nor his girlfriend were registered as guests at the Airport Inn that weekend. N.T. 9/21/87, 228, 229.
[5] Ms. Metzger Wyatt was killed late Sunday night or early Monday morning. Cruz' testimony changes as to what day
he saw the victim and Washington fighting, but he repeatedly says that the fight was on Saturday night and that Milton said
that he "did something bad" to his lady on Sunday—before the murder. N.T. 9/21/87, 203, 210, 223, 226, 250, 251.

21.     On August 3, 1989, Kennedy recanted his trial testimony in a sworn affidavit and stated

that not only had Washington never confessed to killing Ms. Metzger Wyatt, but he proclaimed his

innocence to Kennedy.  Kennedy admitted committing perjury at the request of Allentown Police

officers in order to secure his freedom.  See Affidavit from Benjamin Kennedy, dated August 3, 1989,

attached as Exhibit A.  On December 16, 1991, Kennedy was called to testify at a hearing for

Washington's Motion for a New Trial Based on After-Discovered Evidence, but Kennedy invoked his

Fifth Amendment right against self-incrimination. N.T. 12/16/91 before Judge Backenstoe, 6.

22.     Anthony Rish also testified for the Commonwealth at trial.  Anthony Rish was an inmate

in Lehigh County Prison during the time Washington was incarcerated for a parole violation.  N.T.

9/22/87, 434.  Rish claimed that he was friends with an inmate named Andrew Gratt who knew both

Washington and Ms. Metzger Wyatt. N.T. 9/22/87, 434.  According to Rish, Gratt was upset about Ms.

Metzger Wyatt's death and wanted to get revenge on Washington.  N.T. 9/22/87, 435.  Rish testified

that he and Gratt devised a plan to get Washington to confess to the murder so that Gratt and Rish could

inform the authorities. N.T. 9/22/87, 436.  Because Washington and Gratt knew each other, Washington

allegedly confided in Gratt that he killed Ms. Metzger Wyatt because he loved her and she made

"good" money but she was going to leave him. N.T. 9/22/87, 441, 448.  Rish also testified that

Washington said that his other prostitutes would "think twice" about messing with him because of what

happened to Ms. Metzger Wyatt. N.T. 9/22/87, 443.  In exchange for testifying against Mr. Washington,

Rish's bail was reduced and he was released from prison in March 1987. N.T. 9/22/87, 434.

23.     On July 19, 1990, and again on September 19, 1992, Rish sent Washington letters

stating that he and Andrew Gratt made up the story about Washington confessing and that the District

Attorney's office "forced" him to testify against Washington by threatening to put him "in front of the

worst judge and give [him] 5-10 years." See letters from Anthony Rish, dated July 19, 1990 and

September 19, 1992, attached collectively as Exhibit B.

9

24.     Andrew Gratt was released on his own recognizance shortly after he and Rish contacted authorities about Mr. Washington's alleged confession. N.T. 9/23/87, 579-80, 583, 593. Gratt then fled the state and could not be located at the time of the trial. N.T. 9/23/87, 574, 589. Gratt's testimony from Washington's preliminary hearing was consistent with Rish's testimony described above and was read into the record at Washington's trial. N.T. 9/23/87, 620-21.

25.     At trial, Mr. Washington testified and denied any involvement in the murder. Washington testified that he spent the night of June 29, 1986, in the motel room with Ms. Metzger Wyatt's children, except for a short period of time in which he purchased ice cream from a nearby convenience store. N.T. 9/25/87, 968. In the early morning hours of June 30, 1986, after not hearing from Ms. Metzger Wyatt for several hours, Washington called a cab and went looking for her. N.T. 9/25/87, 971. He saw a friend, Edward Godreau, who agreed to drive Washington around to search for Ms. Metzger Wyatt. N.T. 9/25/87, 974. At 8:12 a.m. on June 30th, 1986, Washington called the Allentown Communications Center to file a missing person's report. N.T. 9/21/87, 117; N.T. 9/25/87, 980.

26.     In the weeks leading up to her murder, Ms. Metzger Wyatt called the Allentown Police numerous times to seek protection from her estranged husband, Kerry Wyatt. N.T. 9/21/87, 100. Washington testified that Kerry Wyatt had threatened to kill Metzger Wyatt two weeks prior to her murder and stated that she would be sorry for leaving him. N.T. 9/28/87, 1091.

27.     Mr. Washington has consistently maintained his absolute innocence in this crime.

**ENTITLEMENT TO RELIEF UNDER 42 PA. C.S. § 9543.1**

1.     Mr. Washington is requesting post-conviction DNA testing of any physical evidence which still exists and is in control of the Commonwealth. See 42 Pa. C.S. §§ 9543.1.

2.     To file for post-conviction DNA testing, (1) an applicant must be serving a term of

10

imprisonment; (2) the evidence to be tested must be available for testing as of the date of the motion; and (3) the evidence to be tested must not have "been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial." 42 Pa. C.S. § 9543.1 (a).

3.       In addition, an applicant for post-conviction DNA testing must: (1) specify the evidence to be tested; (2) consent to provide samples of bodily fluid for use in the DNA testing; (3) acknowledge that any data obtained from the applicant's DNA testing may be entered into law enforcement databases; (4) assert his actual innocence of the offense for which he was convicted; and (5) present a prima facie case demonstrating that (a) the identity of the perpetrator was at issue in the proceedings and (b) DNA testing, assuming exculpatory results, would establish the applicant's actual innocence of the offense for which the applicant was convicted.  42 Pa. C.S. § 9543.1 (c)(1)-(3).

### A. Mr. Washington meets the requirements of Section 9543.1(a).

4.       Mr. Washington is an inmate at the Pennsylvania State Correctional Institution at Graterford, and is serving the sentence he received as a result of his conviction of the crime at issue here.

5.       Mr. Washington avers that there is evidence containing biological material from the crime scene that has not been subject to DNA testing.

6.       Mr. Washington pleads that this evidence "is related to the investigation or prosecution that resulted in the judgment of conviction." 42 Pa. C.S. § 9543.1(a)(1).

7.       Mr. Washington pleads that this evidence was never subject to DNA testing, "because the technology for testing was not in existence at the time of trial." 42 Pa. C.S. § 9543.1(a)(2).  Since Mr. Washington was convicted before January 1, 1995, he need only show that the technology for testing was not in existence at the time of trial. *Id.*  DNA testing became available in the United States in 1992.  Accordingly, none of the DNA testing sought herein was available at the time of Mr.

11

Washington's trial in late 1987.

**B.   Mr. Washington further meets the requirements of Section 9543.1 (c) (1)-(2)**

8.      There are several items of evidence that were collected during the investigation that contain DNA evidence that will exclude the petitioner as the perpetrator of the crime:

(1) Numerous pieces of wood;

(2) The silver pocketknife;

(3) The victim's clothes, including her bra, sweater, pants, jacket, underwear, and sandals;

(4) The victim's personal items that were found strewn around her body, including her comb, wallet, and the contents of her wallet; and

(5) Biological evidence collected from the victim, including gum, throat, anal and vaginal smears and swabs and the victim's fingernail clippings.

9.      There is a box of evidence currently stored at the Lehigh County Courthouse that contains, at the least, pieces of wood, the knife, the victim's clothing, the victim's personal items, and the envelope with the wood fragments and hair samples. It is unclear whether the biological evidence collected from the victim still exists.

**Comment [TLS1]:** The State Police Lab never retained this evidence. As far as I could tell it was not in the box at the courthouse, but I didn't go through the whole box b/c nothing was packaged. Apparently the DA's office has two boxes of evidence, so I have a call into ADA Heather Gallagher about this.

10.     Mr. Washington consents to providing samples of his bodily fluids for use in the DNA testing of the evidence.

11.     Mr. Washington fully understands that, "if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the [petitioner] in other cases." 42 Pa. C.S. § 9543.1(c)(1)(iii).

12.     Mr. Washington asserts that he is actually innocent of this crime and that DNA testing of the evidence involved will prove as much.  He has never made any statements accepting responsibility

12

for this crime, including at sentencing or before the Pennsylvania Board of Parole.

13.     The identity of the perpetrator was at issue in Mr. Washington's case.

**C.      DNA Testing of the Requested Items Will Establish a *Prima Facie* Case of Actual Innocence as Required by Section 9543.1 (c)(3).**

14.     To qualify for post-conviction DNA testing, Mr. Washington must establish a *prima facie* case that exculpatory results of the DNA testing identified in the motion would establish his actual innocence of the crime for which he was convicted.  42 Pa. C.S. § 9543.1(c)(3)(ii).  The Court must first assume that the DNA testing requested would yield results exculpating Mr. Washington and then determine if those exculpatory DNA results would establish Mr. Washington's actual innocence of the murder.  Id.  Here, exculpatory DNA testing results from the evidence outlined above, considered collectively, will certainly establish Mr. Washington's actual innocence.

15.     Because this was a violent and intimate attack in which the assailant struggled with the victim, hit her repeatedly in the head with a piece of wood, stabbed her 49 times, removed her pants, covered her face with a jacket, and scattered the contents of her pockets around her body, the perpetrators' DNA is almost certainly on the wood pieces, the knife, and the victim's clothes and belongings.  Mr. Washington seeks to test the wood pieces, the pocket knife, the clothes found on and around Metzger Wyatt's body, the wallet, the comb and all of the biological samples taken from the victim.

16.     The results of the DNA testing on this evidence will likely identify the true perpetrator after the results are uploaded into the national DNA database, the Combined DNA Index System ("CODIS").

17.     While the mere absence of Mr. Washington's DNA on the wood pieces, knife, clothing, personal items, and biological samples, in and of itself is insufficient to exonerate Mr. Washington it would place sufficient doubt on the accuracy of the verdict against him as to require a new trial.

Furthermore, the absence of Mr. Washington's DNA in conjunction with the presence of a redundant DNA profile on multiple pieces of evidence would establish Mr. Washington's actual innocence. Had the jury been aware that Mr. Washington's DNA was not on the pieces of wood, knife or victim's clothing, and that another person's DNA was on all or multiple pieces of this evidence, no rational juror would have convicted Mr. Washington.

18.     Actual innocence "means factual innocence, not mere legal insufficiency[.]" Commonwealth v. Williams, 936 A.2d 12, 25 (Pa. 2007); accord Bousley v. United States, 523 U.S. 614, 623-24 (1998). In determining the meaning of "actual innocence" as it pertains to Section 9543.1, Pennsylvania courts have applied the standard set forth by the U.S. Supreme Court in Schlup v. Delo, 513 U.S. 298 (1996). In Schlup, the Court held that a petitioner can demonstrate actual innocence by producing newly discovered evidence that makes it "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Id. at 327; accord House v. Bell, 547 U.S 518 (2006). While the Schlup standard is "demanding," it "does not require absolute certainty about the petitioner's guilt or innocence." Bell, 547 U.S. at 519. Moreover, because a Schlup "claim involves evidence the trial jury did not have before it, the inquiry requires the...court to assess how reasonable jurors would react to the overall, newly supplemented record." Id.

19.     For the purposes of this motion, we must assume that the DNA testing will reveal a redundant DNA profile, and that this profile excludes Mr. Washington. See 42 Pa. C.S. § 9543.1 (c)(3) ("DNA testing of the specific evidence assuming exculpatory results would establish ... the applicant's actual innocence of the offense charged") (emphasis added); see also Powers v. State, No. ⸗ W2008–01346–SC–R11–PC, 2011 WL 2410462, at *13 (Tenn. June 16, 2011) (" 'the trial court should postulate whatever realistically possible test results would be most favorable to [the] defendant in determining whether he has established' the reasonable probability requirement under that jurisdiction's DNA testing statute.") (quoting State v. Peterson, 836 A.2d 821, 827 (N.J. Super. Ct. App. Div. 2003)).

14

If a redundant foreign DNA profile is found on multiple pieces of evidence intimately associated with this crime, then no jury would have found that Mr. Washington murdered Ms. Metzger Wyatt.

20.    In Mr. Washington's case, exculpatory DNA results would satisfy the Schlup standard for the purposes of Section 9543.1 by establishing Mr. Washington's actual innocence under both a "redundant DNA profile theory" and a "databank theory" as explained and endorsed by the Superior Court in Commonwealth v. Conway, 14 A.3d 101, 111 (Pa. Super. Ct. 2011).  No reasonable juror would have found Mr. Washington guilty beyond a reasonable doubt had the exculpatory DNA results outlined below been introduced at trial.

### 1. DNA testing on the wood pieces, the knife, the victim's clothing and the victim's personal items, will establish Mr. Washington's actual innocence.

21.    Mr. Washington seeks DNA testing on the wood pieces, the knife, the victim's clothes, and the victim's personal items because it is highly likely that the perpetrator left skin cells on this evidence in the course of the crime.  Further, because the attack against Ms. Metzger Wyatt was violent and intimate, and she had numerous defensive wounds, it is likely that the perpetrator himself bled onto numerous pieces of evidence, in particular onto her clothing, the knife, and the wood used to beat her. Testing done at the time of trial revealed blood on the wood pieces, and on the victim's sweater and bra.  Some of this blood was determined to be Type A and some of it was blood of an undetermined type.

(1)    **Wood pieces:**  It is highly probable that the true perpetrator left biological material on the wood pieces due to the rough surface of the wood and the aggressive way the wood was gripped and used to repeatedly strike the victim.  N.T.  9/23/87, 551. Mr. Washington seeks DNA testing of any blood on the wood pieces because it is highly likely that the perpetrator bled during the commission of this violent attack.

(2)    **The knife:**  Dr. Mihalakis testified that the knife found at the scene was

15

_und inastycotion_

consistent with causing the fatal injuries. N.T. 9/23/87, 552-554. Since the true perpetrator of

the crime likely used this knife to kill the victim, it is highly probable that some of the

perpetrator's skin cells will be on the knife and will be identifiable using DNA testing. In

addition, there was human blood of an "undetermined" type found on the handle of the knife.

Mr. Washington also seeks DNA testing of any blood found on the knife because the

perpetrator may have cut himself in the course of stabbing the victim 49 times.

(3) **Ms. Metzger Wyatt's clothing:** The attack on Ms. Metzger Wyatt was intimate

and prolonged and thus it is highly likely that the true perpetrator transferred skin cells onto the

victim's clothes, particularly because the victim's pants were removed prior to the perpetrator

stabbing her in the leg and buttock, and because her jacket was draped over her head. Again,

because Ms. Metzger Wyatt had defensive wounds, it is highly probable that the perpetrator

bled onto her clothing. N.T. 9/23/87, 547-48.

(4) **Personal items:** Ms. Metzger Wyatt's wallet, the contents of her wallet, sandals,

and comb were strewn around her body. It is highly probable that the perpetrator touched these

items and transferred skin cells onto them.

(5) **Biological samples:** The criminologist testified that the vaginal smear collected

during the autopsy was found to contain acid phosphatase and sperm. N.T. 9/22/87, 280.

Because she was a prostitute, Ms. Metzger Wyatt may have had intercourse shortly before her

death with a man who was not her killer. However, if the DNA profile from the sperm matches

the profile found on other pieces of evidence, we can be certain that this is the perpetrator.

> **2. The presence of a redundant DNA profile will establish a *prima facie* case identifying the true perpetrator of this murder.**

22.     Standing alone, the mere absence of Mr. Washington's DNA on all of the evidence may

not be sufficient to establish Mr. Washington's innocence, though it would cast significant doubt on his

16

guilt.  See, e.g., Heilman, 867 A.2d at 547.  However, if Washington's DNA is not present on any of the

pieces of evidence *and* there is identifiable DNA from a heretofore unknown person on multiple items

of evidence, these "'redundant' results would give rise to an inference of a separate assailant."

Conway, 14 A.3d at 111.  Redundant results arise when the same genetic profile is detected on

multiple items of evidence. [6]  If Mr. Washington's DNA is not present, and the DNA profile of an

individual other than Metzger Wyatt is present on more than one piece of evidence handled by the

perpetrator, then that individual, and not Mr. Washington, is the true perpetrator. [7]

23.    Here, there can be no innocent explanation as to why the same DNA profile would be

present on two or more items of evidence so intimately connected to Ms. Metzger Wyatt's murder.  The

absence of Mr. Washington's DNA coupled with a redundant DNA profile would be sufficient to prove

his actual innocence.  The "relative weight of the Commonwealth['s] circumstantial evidence would

obviously be outweighed by the discovery of relevant DNA evidence constituting substantial direct

evidence of the identity of a separate assailant." Conway, 14 A.3d at 111.  No reasonable juror,

presented with that evidence, would have convicted Mr. Washington.

### 3.  Uploading an unknown DNA profile into CODIS will establish the true identity of the actual murderer of Ms. Mezger Wyatt.

24.    As of February 2011, CODIS contained 9,404,747 offender profiles and 361,176

---

6  Redundant DNA results have played a role in past DNA exonerations.  For example, redundant DNA results led to
Stephan Cowans' exoneration.  After being convicted of charges arising from the shooting of a police officer,  Cowans
sought DNA testing on numerous items that the perpetrator touched or wore, including a drinking glass, a baseball cap
and a sweatshirt.  DNA tests identified the same male DNA profile on the baseball cap, the swabs from the glass, and
the sweatshirt, and the profile was inconsistent with Cowan's DNA profile.  Due to the redundant DNA results, the
Commonwealth of Massachusetts freed Cowans and declared him innocent in February 2004. (Innocence Project,
www.innocenceproject.org/Content/73.php (last visited March 30, 2011.)

7  In Holmes v. South Carolina,a the U.S. Supreme Court stated, "[j]ust because the prosecution's evidence, *if credited*,
would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak
logical connection to the central issues in the case." 547 U.S. 319, 330 (2006).  The Holmes Court held that a criminal
defendant's federal constitutional rights are violated by a South Carolina evidence rule under which the defendant may
not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, supports a
guilty verdict. The Court noted that evidence of third-party guilt is particularly conspicuous in cases like Mr.
Washington's, "where the credibility of the prosecution's witnesses or the reliability of its evidence is not conceded." *Id.*

17

forensic samples from crime scenes. Federal Bureau of Investigation, National DNA Index System Statistics, available at http://www.fbi.gov/hq/lab/codis/clickmap.htm (last visited April 8, 2011). CODIS had produced over 138,700 hits assisting in more than 133,400 investigations. Id. CODIS contains over 238,582 Pennsylvania offender profiles alone and 8,845 forensic samples from Pennsylvania crime scenes, which have aided in 3,489 investigations. Id. Pennsylvania also has its own DNA database that is compatible with CODIS. See 44 Pa. C.S. § 2312 ("The State DNA Data Base is reestablished. It shall be administered by the State Police and provide records to the FBI for storage and maintenance by CODIS."); 44 Pa. C.S. § 2315 ("The DNA identification system as established by the State Police shall be compatible with the procedures specified by the FBI"). Certain offenders, parolees, probationers, and adjudicated minors must submit a DNA sample that is uploaded into the databank along with DNA samples from unsolved offenses. 44 Pa. C.S. § 2312(1). The General Assembly established Pennsylvania's DNA databank because "DNA data banks [sic] are an important tool in criminal investigations, in the exclusion of individuals who are subject of criminal investigations or prosecutions and in deterring and detecting recidivist acts." 44 Pa. C.S. § 2301(1).

25.     There have been many DNA exonerations in which the true perpetrator was found via a DNA databank hit. See President's DNA Initiative, *Linking Crimes to Criminals: Forensic DNA Databases, available at* http://www.dna.gov/dna-databases (last visited March 9, 2011) ("Given the recidivistic nature of many crimes a likelihood exists that the individual who committed the crime being investigated was convicted of a similar crime and already has his or her DNA profile in a DNA database that can be searched by [CODIS]."). Indeed, in 81 of the first 216 DNA exonerations, DNA results ultimately identified the real perpetrator. Jeff Carlton, *DNA Reveals True Perpetrator in 1982 Dallas County Rape*, Dallas Morning News, Jan. 30, 2008.

26.     Thus, the redundant DNA profile discussed above could be entered into CODIS and compared with more than 9 million genetic profiles, which could lead to the identification of the true

18

perpetrator. In Conway, the Court agreed that 42 Pa. C.S. § 2302 entitles defense counsel to compare

test results with databanks in order to show "that such evidence establishes the innocence of a person

who has been charged or convicted of a crime." Conway, 14 A.3d at 111. The Court noted that "DNA

banks are an important tool in criminal investigations, *in the exclusion of individuals who are the*

*subject of criminal investigation or prosecution*." Id. (citing to 42 Pa. C.S. § 2302(1)) (emphasis

supplied by the Conway Court). Further, it is possible that the true perpetrator would be compelled to

confess to Metzger Wyatt's murder when confronted with compelling DNA evidence establishing his

guilt. Id.


**CONCLUSION AND REQUESTED RELIEF**

     27.    Exculpatory DNA results from the numerous pieces of evidence handled by the

perpetrator will conclusively establish Mr. Washington's actual innocence. If presented with evidence

that Mr. Washington's DNA was not on any pieces of evidence and that a redundant DNA profile was

found on Ms. Metzger Wyatt's clothes, the pieces of wood, and the knife, no rational juror would have

convicted Mr. Washington.

     28.    Assuming that DNA results reveal a redundant DNA profile on evidence handled by the

perpetrator, which does not match Mr. Washington, and that the redundant DNA profile matches an

offender in CODIS, no reasonable juror would have convicted Mr. Washington of Ms. Metzger Wyatt's

murder. Thus, exculpatory DNA results outlined in this petition would conclusively establish Mr.

Washington's actual innocence and Mr. Washington is entitled to the DNA testing he requests.

Fortunately, current DNA technology can definitively determine whether Mr. Washington is in fact

innocent of Ms. Metzger Wyatt's murder.


     **WHEREFORE**, Mr. Washington requests the following relief:

1.    An Order compelling the Commonwealth to properly preserve all evidence until further order from the Court;

2.    A hearing on the instant motion;

3.    An Order compelling the Pennsylvania State Police Crime Laboratory, the Allentown Police Department, and the Lehigh County District Attorney's Office, to disclose all documentation and evidence regarding the physical evidence Mr. Washington's case;

4.    An Order releasing the sought-after evidence to an accredited DNA laboratory that is agreed upon by the Commonwealth and undersigned counsel;

5.    Any other Order that the Court deems necessary to adequately protect Mr. Washington's state and federal constitutional rights.

Respectfully submitted,

_____
Charlotte Haldeman Whitmore
Staff Attorney
The Pennsylvania Innocence Project
at Temple University Beasley School of Law
1719 N. Broad St.
Philadelphia, Pa 19122

_____
Craig M. Cooley
Staff Attorney
The Innocence Project
100 Fifth Avenue, 3rd Floor
New York, New York 10011
Tel. 212.364.5361

20

EXHIBIT D

FILED REMAND WITH THE SUPREME COURT
TO COMPLETE DNA TESTING

Milton Washington, AS2018 A A1093
SCI Graterford
PO Box 244
Graterford, PA 19426-0244

January 30, 2018

Re: Application For Remand
Docket No. 682 MAL 2017

Dear Prothonotary,

Forensic Pathologist, Dr. Isidore Mihalakis, M.D., was recently contacted concerning the rape kit in this case or knows where it might be. He directed me to the autopsy report as to who has possession of the rape kit. The autopsy report indicates that investigating Detective Barry Giacobbe, from the Allentown Police Department took custody of the rape kit.

I am amending Application For Remand with Exhibit C, showing that the Senior Deputy District Attorney, Heather F. Gallagher, and lead detective Barry Giacobbe, of the Allentown Police Department have in their possession the rape kit and has denied the petitioner DNA testing under a granted Order of Consent to test all DNA evidence in this case.

Sincerely,

*Milton S Washington*

Milton Washington

Received In Supreme Court

FEB 0 2 2018

Middle

Supreme Court Middle District
682 MAL 2017

IN THE SUPREME COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania            :     3596 EDA 2015
                        v.               :
Milton Washington                        :
Appellant                                :

AMENDED PROOF OF SERVICE

I hereby certify that this 29th day of January 2018, I have served amended exhibited C of Application for Remand upon all individuals on the date(s) and in the manner stated below, which satisfies the requirements of Pa.R.A.P. 121:

Service By First Class Mail

Heather F. Gallagher                    Nilam A. Sanghvi, Esq.
Senior Deputy District Attorney         The Pennsylvania Innocence
Lehigh County Courthouse                Project
Room 307                                1719 N. Broad  Street
455 Hamilton Street                     Philadelphia, PA 19122
Allentown, PA 18101-1614

Milton Washington, A82081 A A1093
SCI GTraterford
January 30, 2018                        PO Box 244
                                        Graterford, PA 19426-0244

Received in Supreme Court

FEB 0 2 2018

Middle

EXHIBIT E

STIPULATED ORDER PROTECTING PLAINTIFF
FOURTEENTH AMENDMENT RIGHTS

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :

                     vs.             :     No. CP-39-CR-0000515-1987

MILTON WASHINGTON         :
      Defendant.           :

### STIPULATED ORDER

AND NOW, this 29th day of February, 2012, pursuant to the agreement of the parties

and the authority of the Court under 42 Pa.C.S.A. § 9543.1 and Pa.R.Crim.P. 902, the Court

hereby orders as follow:

1. DNA testing shall be conducted on all evidence retained by the Clerk of the Criminal

   Courts in this matter.

2. Counsel for Mr. Washington has confirmed that the Clerk of the Criminal Court, Lehigh

   county, has retained the following items of evidence in its possession:

   a. numerous pieces of wood;

   b. a silver pocketknife;

   c. the victim's clothing, including her bra, sweater, pants, jacket, sandals, and

      underwear; and

   d. the victim's personal items, including her wallet, comb, and the contents of her

      wallet.

3. Within 60 days of this Order, the Pennsylvania State Police Crime Laboratory at

   Bethlehem, PA, the Allentown Police Department and the Lehigh County Office of the

   Coroner shall inform the Court of its efforts to locate any documentation and material

1

RECEIVED MAR 1 2 2012

regarding the physical evidence collected and/or received in reference to the murder of Tina Marie Metzger Wyatt on June 30, 1986 in Allentown, PA, including but not limited to the evidence collected during the victim's autopsy: gum, throat, anal and vaginal smears and swabs, and the victim's fingernail clippings. That information shall be forwarded to the undersigned attorneys for Mr. Washington and the Commonwealth.

4. Within 60 days of this Order the Pennsylvania State Police Crime Laboratory at Bethlehem, PA and the Allentown Police Department shall inform the Court of any evidence located and its location. If any evidence was destroyed or otherwise disposed, the aforementioned shall provide the Court with any information [and/or documentation] it has regarding said destruction or disposition. Information regarding retention and/or other disposition shall be forwarded to the undersigned attorneys for Mr. Washington and the Commonwealth.

5. The parties agree to DNA testing on any evidence retained by the aforementioned.

6. Within 60 days of the date of entry of the Order, one or more representatives of the Commonwealth will properly package the evidence so it is not damaged and cannot be contaminated during transit. Once properly packaged, the representative shall transmit the items by Federal Express overnight delivery to Orchid Cellmark Forensic Lab, 13988 Diplomat Drive, Suite 100, Farmers Branch, TX 75234. Shipping costs will be paid by the Pennsylvania Innocence Project.

7. Upon receipt of items, Orchid Cellmark shall inventory, document and photograph the items prior to testing. Testing shall proceed as follows:

    a. Orchid Cellmark shall test the evidence to determine if there are any interpretable DNA profile(s) foreign to the victim, Tina Metzger Wyatt. During testing, Orchid Cellmark shall consume no more of the item than is necessary to obtain result. If

2

Orchid Cellmark determines its testing will consume an entire sample, Orchid Cellmark shall contact District Attorney James B. Martin, Lehigh County District Attorney's Office, 455 W. Hamilton Street, Allentown, PA 18101, 610-782-3100 (office), 610-820-3323 (fax) and Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19112, 215-204-4255 (office), 215-204-0199 (fax), to obtain the parties' consent prior to testing.

b. If Orchid Cellmark obtains an unknown male DNA profile or profiles from the evidence, it shall perform another round of tests. Mr. Washington's reference samples shall be collected by the Commonwealth and submitted (using buccal swabs) to Orchid Cellmark for comparison to the DNA profile(s). Orchid Cellmark shall subject defendant's reference samples to DNA testing and comparison against any DNA recovered from the evidence tested.

c. Upon completion of DNA testing, Orchid Cellmark shall publish its findings in a report which shall be transmitted to the undersigned attorneys for Mr. Washington and the Commonwealth.

d. Pennsylvania State Police shall compare any unidentified male DNA profile(s) obtained from the evidence tested by Orchid Cellmark to the profiles stored in state and federal forensic DNA databanks (CODIS).

8. All evidence not consumed during testing shall be returned to the original submitting agency. If DNA testing produces inconclusive or uninterpretable results, the Commonwealth shall preserve the evidence as long as defendant remains incarcerated or under supervision for his conviction in the instant case.

9. By agreeing to this Order, petitioner is not waiving any state or federal statutory or constitutional right to seek additional DNA testing regarding any evidence collected in relation to Tina Metzger Wyatt's murder, or any other claims for post-conviction relief.

10. Either The Innocence Project in New York or the Pennsylvania Innocence Project shall pay for all DNA testing set forth herein.  All bills for DNA testing shall be forwarded to Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19122.

BY THE COURT:

_____, J.

EXHIBIT F

STIPULATION TO TERMS AND CONDITIONS
OF DNA TESTING

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :
    :
         vs.             :    No. CP-39-CR-0000515-1987
    :
MILTON WASHINGTON         :
    Defendant.          :

## STIPULATION OF THE PARTIES TO TERMS AND CONDITIONS OF DNA TESTING

In light of the court's February 29, 2012 order directing the DNA testing of the evidence in the above-captioned matter, the parties hereby stipulate and agree as follows:

1. This Order modifies the previously filed Stipulation of the Parties with respect to DNA testing and comparison.

2. DNA testing shall be conducted on all evidence retained by the Clerk of the Criminal Courts in this matter.

3. Counsel for Mr. Washington has confirmed that the Clerk of the Criminal Court, Lehigh county, has retained the following items of evidence in its possession:

    a. numerous pieces of wood;

    b. a silver pocketknife;

    c. the victim's clothing, including her bra, sweater, pants, jacket, sandals, and underwear; and

    d. the victim's personal items, including her wallet, comb, and the contents of her wallet.

4. The parties agree to DNA testing on any evidence retained in this case.

1

5. Orchid Cellmark Forensic Lab has received the above-listed evidence. Orchid Cellmark shall inventory, document and photograph the items prior to testing. Testing shall proceed as follows:

    a. Orchid Cellmark shall test the evidence to determine if there are any interpretable DNA profile(s) foreign to the victim, Tina Metzger Wyatt. During testing, Orchid Cellmark shall consume no more of the item than is necessary to obtain result. If Orchid Cellmark determines its testing will consume an entire sample, Orchid Cellmark shall contact District Attorney James B. Martin, Lehigh County District Attorney's Office, 455 W. Hamilton Street, Allentown, PA 18101, 610-782-3100 (office), 610-820-3323 (fax) and Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19112, 215-204-4255 (office), 215-204-0199 (fax), to obtain the parties' consent prior to testing.

    b. If Orchid Cellmark obtains an unknown DNA profile or profiles from the evidence, it shall perform another round of tests. Mr. Washington's reference samples has been collected by the Commonwealth and submitted (using buccal swabs) to Orchid Cellmark for comparison to the DNA profile(s). Orchid Cellmark shall subject Mr. Washington's reference samples to DNA testing and comparison against any DNA recovered from the evidence tested.

    c. Upon completion of DNA testing, Orchid Cellmark shall publish its findings in a report which shall be transmitted to the undersigned attorneys for Mr. Washington and the Commonwealth.

6. If Orchid Cellmark obtains an unknown DNA profile or profiles from the evidence, within 7 days of completing testing and publishing its findings in a report, a

2

representative of Orchid Cellmark will properly package the evidence listed above so it is not damaged and cannot be contaminated during transit.  Once properly packaged, the Orchid Cellmark representative shall transmit the items by Federal Express overnight delivery to the Lima Regional Laboratory of the DNA Division of the Pennsylvania State Police ("PSP Lab").  All costs related to shipping will be paid by the Pennsylvania Innocence Project.

7. Further DNA testing shall be performed by the PSP Lab as per PSP Bureau of Forensic Sciences policies so that any unknown profile(s) may be uploaded into state and federal forensic DNA databanks (CODIS).  Costs related to testing and reporting by PSP will be borne by the Commonwealth of Pennsylvania because Mr. Washington is indigent.

8. Upon receipt of the above named items, PSP Lab shall inventory, document and photograph the items prior to testing.  Testing shall proceed as follows:

   a. Within 30 days of receiving the evidence from Orchid Cellmark, PSP Lab shall test the evidence to determine if there are any interpretable DNA profile(s) foreign to the petitioner, Milton Washington.   During testing, PSP Lab shall consume no more of the item than is necessary to obtain result.  If PSP Lab determines its testing will consume an entire sample, PSP Lab shall contact District Attorney James B. Martin, Lehigh County District Attorney's Office, 455 W. Hamilton Street, Allentown, PA 18101, 610-782-3100 (office), 610-820-3323 (fax) and Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19112, 215-204-4255 (office), 215-204-0199 (fax), to obtain the parties' consent prior to testing.

3

b.  PSP Lab shall compare any unidentified DNA profile or profiles obtained from the evidence tested to the profiles stored in state and federal forensic DNA databanks (CODIS).

c.  Upon completion of DNA testing, PSP Lab shall publish its findings in a report which shall be transmitted to the undersigned attorneys for Mr. Washington and the Commonwealth.

9.  All evidence not consumed during testing shall be returned to the original submitting agency.   If DNA testing produces inconclusive or uninterpretable results, the Commonwealth shall preserve the evidence as long as defendant remains incarcerated or under supervision for his conviction in the instant case.

10. By agreeing to this Order, petitioner is not waiving any state or federal statutory or constitutional right to seek additional DNA testing regarding any evidence collected in relation to Tina Metzger Wyatt's murder, or any other claims for post-conviction relief.

11. Either The Innocence Project in New York or the Pennsylvania Innocence Project shall pay for all DNA testing conducted by Orchid Cellmark.  All bills for DNA testing shall be forwarded to Charlotte Whitmore, Staff Attorney, The Pennsylvania Innocence Project at Temple University Beasley School of Law, 1719 North Broad Street, Philadelphia, PA 19122.

Respectfully submitted,


_____

Charlotte H. Whitmore, Esquire
The Pennsylvania Innocence Project
1719 N. Broad St.
Philadelphia PA 19122
(215) 204-4255


Heather Gallagher, Esquire
Deputy District Attorney
Lehigh County District Attorney's Office
455 W. Hamilton Street
Allentown, PA  18101
(610) 782-3104


DATE:___8/15/12_____          DATE:_____

5

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :
                           :
            **vs.**                :       No. CP-39-CR-0000515-1987
                           :

MILTON WASHINGTON            :
      **Defendant.**               :

## ORDER

AND NOW, this 28th day of August, 2012, pursuant to the agreement of

the parties and the authority of the Court under 42 Pa.C.S.A. § 9543.1 and Pa.R.Crim.P. 902, the

attached "Stipulation of the Parties to Terms and Conditions of DNA Testing," is made an

ORDER of the Court.

BY THE COURT:

Maria L. Dantos, J.

FILED
2012 AUG 28 P 3: 43
CLERK OF COURTS
CRIMINAL - JUVENILE
LEHIGH COUNTY, PA

6

RECEIVED SEP 0 4 2012

**EXHIBIT G**

**PENNSYLVANIA STATE POLICE DNA ANALYSIS**



PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**
80 N. Westmoreland Avenue
Greensburg, PA 15601
724-832-5423

## DNA Analysis

| | | | |
|---|---|---|---|
| **CASE:** | HOMICIDE | **LAB REPORT:** | D14-00001-1 |
| **DATE:** | June 30, 1986 | **REPORT DATE:** | April 10, 2014 |
| **PLACE:** | Lehigh County, Lehigh County, Pennsylvania | **INCIDENT NO.:** | 09-10-002 |
| **FROM:** | Lehigh County DA's Office | | |
| **SUBJECT:** | Metzger Wyatt, Tina (Victim) | | |
| | Washington, Milton (Suspect) | | |

**ITEMS:**

**Q1.** One (1) sealed plastic bag containing previously prepared extract from the crotch area of the blue corduroy jeans [FR12-0079-03.03.8-EF, 1445756]

**Q2.** One (1) sealed plastic bag containing previously prepared extract from the crotch area of the blue corduroy jeans [FR12-0079-03.03.8-SF, 1445757]

**Q3.** One (1) sealed plastic bag containing previously prepared reagent blank [RBEF072513TLT1, 1446716]

**Q4.** One (1) sealed plastic bag containing previously prepared reagent blank [RBSF072513TLT1, 1446717]

**Q5.** One (1) sealed plastic bag containing previously prepared cutting and additional extract dilutions created from crotch area of the blue corduroy jeans [FR12-0079-03.03.8, 1435908] [FR12-0079-03.03.8-EF, 1447863 & 1540467] [FR12-0079-03.03.8-SF, 1447864 & 1540468]

**Q6.** One (1) sealed paper bag containing one (1) pair of blue corduroy jeans [FR12-0079-03.03] - cuttings removed from stained areas of pocket

**Q7\*.** One (1) sealed paper bag containing one (1) pair of blue corduroy jeans [FR12-0079-03.03] - cutting removed from stained area of inner front of crotch

**Q8\*.** One (1) sealed paper bag containing one (1) pair of blue corduroy jeans [FR12-0079-03.03] - cutting removed from stained area of inner back of crotch

\*Specimens that may contain semen/spermatozoa are extracted in two (2) fractions. The non-sperm fraction (F) is enriched for DNA primarily from sources such as white blood cells or epithelial cells (as found in vaginal fluid). The sperm fraction (M) is enriched for DNA from spermatozoa.

The above listed item(s) were received by the Pennsylvania State Police Forensic DNA Division on March 05, 2014 from Cellmark Forensics via FedEx.

**CONCLUSIONS:**

1  Deoxyribonucleic Acid (DNA) isolation and extraction procedures were performed on the above listed item(s). DNA from these sample(s) was amplified using Polymerase Chain Reaction (PCR) and typed for Amelogenin and Short Tandem Repeat (STR) loci using the PowerPlex 16 HS System.

2  The types obtained for each of the items are listed below:

| LOCI | Q1 | Q2 | Q6 | Q7F | Q7M |
|---|---|---|---|---|---|
| D3S1358 | 15,16,(17) | 15,16,(17) | (14),(15),16,17 | 15,16,(17) | 15,16,(17) |
| TH01 | (6),(8),9,9.3 | (8),9,9.3 | 6,8,(9.3) | (6),(8),9,9.3 | (7),(8),9,9.3 |



Any results, conclusions, interpretations, and/or opinions in this laboratory report are those of the author.

RECEIVED APR 1 4 2014

PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**

| | | |
|---|---|---|
| **LAB REPORT:** | D14-00001-1 |
| **REPORT DATE:** | April 10, 2014 |
| **INCIDENT NO.:** | 09-10-002 |

| | | | | | |
|---|---|---|---|---|---|
| D21S11 | 28,29 | 28,29 | 31.2 | 28,29 | 28,29 |
| D18S51 | 14,(16) | 14,16 | -- | 14 | 14,16 |
| Penta E | -- | 7,10 | -- | -- | 7,10 |
| D5S818 | 11,12,(13) | 11,12 | (10),11,(12),13 | 11,12,(13) | (10),11,12 |
| D13S317 | 12 | 12,(13) | 11,14 | (11),12,(13) | 12 |
| D7S820 | 9,(10),11 | 9,11 | 10 | (8),9,(11) | 9,11 |
| D16S539 | 13 | 12,13 | 12 | 12 | 12,13,(14) |
| CSF1PO | 12 | 12 | -- | -- | 12 |
| Penta D | -- | 9,11 | -- | -- | 9,11 |
| Amelogenin | X,Y | X,Y | X | X,Y | X,Y |
| vWA | 16,(18),19 | 16,19 | (15),(16),17,19 | 16,(17),(18),19 | 16,(17),19 |
| D8S1179 | 12,13 | (11),12,13 | 10,13 | 12,13 | (11),12,13 |
| TPOX | 11 | 11 | 8 | 11 | 11 |
| FGA | 21,23 | 21,23 | -- | -- | 21,23 |

| LOCI | Q8F | Q8M |
|---|---|---|
| D3S1358 | 15,16,(17) | 15,16,(17) |
| TH01 | 6,8,9,9.3 | 9,9.3 |
| D21S11 | 28,29,(30.2),(31) | 28,29 |
| D18S51 | 14 | 14,16 |
| Penta E | -- | -- |
| D5S818 | 11,12,(13) | (10),11,12 |
| D13S317 | (11),12,(14) | 12 |
| D7S820 | (8),9,(10),11,(12) | 9,11 |
| D16S539 | 12,13 | 12,13 |
| CSF1PO | -- | 12 |
| Penta D | -- | 9,11 |
| Amelogenin | X,Y | X,Y |
| vWA | 16,17,18,19 | 16,19 |
| D8S1179 | 12,13 | 12,13 |
| TPOX | -- | 11 |
| FGA | 21 | 21,23 |

Data in this table are results that satisfy this laboratory's interpretation guidelines.
Genetic locus Amelogenin is not used in any statistical calculations.

( ) Indicates minor/less intense alleles
-- Indicates no results at the genetic locus

3   A partial DNA profile, consistent with a mixture of at least two (2) individuals, was obtained from the previously prepared extract from the crotch area of the blue corduroy jeans (Item Q1).

A partial DNA profile from an unidentified individual, consistent with a male, was obtained from the major component of this mixture.  If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358, TH01, D18S51, D5S818, D7S820, and vWA.  No further interpretation could be made due to an insufficient

Any results, conclusions, interpretations, and/or opinions in this laboratory report are those of the author.

PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**

**LAB REPORT:**     D14-00001-1

**REPORT DATE:**     April 10, 2014

**INCIDENT NO.:**     09-10-002

quantity of DNA from this minor component.

No results were obtained at genetic loci Penta E and Penta D due to sample degradation.

4    The DNA profile obtained from the previously prepared extract from the crotch area of the blue corduroy jeans (Item Q2) is consistent with a mixture of at least two (2) individuals.

A DNA profile from an unidentified individual, consistent with a male, was obtained from the major component of this mixture. If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358, TH01, D13S317, and D8S1179. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

5    Due to an insufficient quantity of DNA, no results were obtained from:

The previously prepared reagent blank (Item Q3)
The previously prepared reagent blank (Item Q4)

6    The previously prepared cutting and additional extract dilutions created from the crotch area of the blue corduroy jeans (Item Q5) were not analyzed.

7    A partial DNA profile, consistent with a mixture of at least two (2) individuals, was obtained from the cuttings removed from the stained areas of the pocket of the blue corduroy jeans (Item Q6).

A partial DNA profile from a second unidentified individual was obtained from the major component of this mixture. If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358, TH01, D5S818, and vWA. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

No results were obtained at genetic loci D18S51, Penta E, CSF1PO, Penta D, and FGA due to sample degradation.

8    A partial DNA profile, consistent with a mixture of at least two (2) individuals, was obtained from the non-sperm fraction of the cutting removed from the stained area of the inner front crotch of the blue corduroy jeans (Item Q7F).

A partial DNA profile from an unidentified individual, consistent with a male, was obtained from the major component of this mixture. If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**

LAB REPORT:    D14-00001-1

REPORT DATE:    April 10, 2014

INCIDENT NO.:    09-10-002

Additional minor/less intense alleles were also present in genetic loci D3S1358, TH01, D5S818, D13S317, D7S820, and vWA. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

No results were obtained at genetic loci Penta E, CSF1PO, Penta D, and FGA due to sample degradation.

9    The DNA profile obtained from the sperm fraction of the cutting removed from the stained area of the inner front crotch of the blue corduroy jeans (Item Q7M) is consistent with a mixture of at least two (2) individuals.

A DNA profile from an unidentified individual was obtained from the major component of this mixture. This unidentified DNA profile, consistent with a male, was searched against CODIS at the above mentioned loci. No investigative leads were established as a result of this search. This unidentified profile has been uploaded to CODIS and future searches will be conducted on a weekly basis as additional profiles are entered into CODIS. If an investigative lead is established, a supplemental report will be issued. If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358, TH01, D5S818, D16S539, vWA, and D8S1179. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

10    A partial DNA profile, consistent with a mixture of at least three (3) individuals, was obtained from the non-sperm fraction of the cutting removed from the stained area of the inner back crotch of the blue corduroy jeans (Item Q8F).

A partial DNA profile from an unidentified individual, consistent with a male, was obtained from the major component of this mixture. If a direct DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358, D21S11, D5S818, D13S317, and D7S820. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

Genetic loci TH01 and vWA were inconclusive due to the complexity of the mixture. No results were obtained at genetic loci Penta E, CSF1PO, Penta D, and TPOX due to sample degradation.

11    A partial DNA profile, consistent with a mixture of at least two (2) individuals, was obtained from the sperm fraction of the cutting removed from the stained area of the inner back crotch of the blue corduroy jeans (Item Q8M).

A partial DNA profile from an unidentified individual, consistent with a male, was obtained from the major component of this mixture. If a direct DNA comparison is desired, please submit a

Any results, conclusions, interpretations, and/or opinions in this laboratory report are those of the author.

PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**

**LAB REPORT:**    D14-00001-1

**REPORT DATE:**    April 10, 2014

**INCIDENT NO.:**    09-10-002

blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci D3S1358 and D5S818. No further interpretation could be made due to an insufficient quantity of DNA from this minor component.

No results were obtained at genetic locus Penta E due to sample degradation.

12    Deoxyribonucleic Acid (DNA) profiling analysis of the Y chromosome was also performed on:

the cuttings removed from the stained areas of the pocket of the blue corduroy jeans (Item Q6)
the sperm fraction of the cutting removed from the stained area of the inner front crotch of the blue corduroy jeans (Item Q7M)
the sperm fraction of the cutting removed from the stained area of the inner back crotch of the blue corduroy jeans (Item Q8M)

DNA from these sample(s) was amplified using Polymerase Chain Reaction (PCR) and typed for Short Tandem Repeat (STR) loci using the Applied Biosystems Yfiler System.

13    The types obtained for each of the items are listed below:

| LOCI | Q7M | Q8M |
|---|---|---|
| DYS456 | 17,(18) | 17,(18) |
| DYS389I | 14 | 14 |
| DYS390 | 23 | 23 |
| DYS389II | 30 | 30 |
| DYS458 | 17,(18) | 17,(18) |
| DYS19 | 14 | 14 |
| DYS385 a/b | 11,14 | 11,14 |
| DYS393 | (13),14 | 14,(15) |
| DYS391 | 11,(12) | 11 |
| DYS439 | 12 | 12 |
| DYS635 | 23 | 23 |
| DYS392 | 13 | 13 |
| Y GATA H4 | 12 | 12 |
| DYS437 | 15 | 15 |
| DYS438 | 12 | 12 |
| DYS448 | 19 | 19 |
| Data in this table are results that satisfy this laboratory's interpretation guidelines. ( ) Indicates minor/less intense alleles -- Indicates no results at the genetic locus | | |

14    Due to an insufficient quantity of Y chromosome DNA, no interpretable results were obtained from :

the cuttings removed from the stained areas of the pocket of the blue corduroy jeans (Item Q6)

Any results, conclusions, interpretations, and/or opinions in this laboratory report are those of the author.

PENNSYLVANIA STATE POLICE
BUREAU OF FORENSIC SERVICES

**Forensic DNA Division**

LAB REPORT:        D14-00001-1

REPORT DATE:     April 10, 2014

INCIDENT NO.:      09-10-002

15   The Y chromosome DNA profiles obtained from the sperm fraction of the cutting removed from the stained area of the inner front crotch of the blue corduroy jeans (Item Q7M) and the sperm fraction of the cutting removed from the stained area of the inner back crotch of the blue corduroy jeans (Item Q8M) are consistent with mixtures of at least two (2) individuals.  A Y chromosome DNA haplotype from an unidentified individual was obtained from the major component of these DNA mixtures.

If a direct Y chromosome DNA comparison is desired, please submit a blood sample in a lavender top tube or a buccal collector from the individual to the laboratory.

Additional minor/less intense alleles were also present in genetic loci DYS456, DYS458, DYS393, and DYS391 of the sperm fraction of the cutting removed from the stained area of the inner front crotch of the blue corduroy jeans (Item Q7M).  No further interpretation can be made on this minor component.
Additional minor/less intense alleles were also present in genetic loci DYS456, DYS458, and DYS393 of the sperm fraction of the cutting removed from the stained area of the inner back crotch of the blue corduroy jeans (Item Q8M).  No further interpretation can be made on this minor component.

DISPOSITION:          **THE EVIDENCE FOR THIS CASE WILL BE RETURNED TO THE LEHIGH COUNTY DISTRICT ATTORNEY'S OFFICE.**

**THE REMAINING PROCESSED DNA EXTRACT FROM ITEMS EXAMINED BY DNA ANALYSIS IS BEING RETURNED IN A DRIED FORM.  THESE ITEMS ARE INCLUDED IN THE PACKAGED EVIDENCE.**

**IT IS RECOMMENDED THAT THE EVIDENCE BE STORED IN A REFRIGERATOR OR MANUAL DEFROST FREEZER OR A COOL DRY PLACE AND ISOLATED FROM EVIDENCE THAT HAS NOT BEEN EXAMINED.**

Michael P. Biondi
DNA Quality Assurance Manager
Forensic DNA Division

**ATTN:** Heather Gallagher

Any results, conclusions, interpretations, and/or opinions in this laboratory report are those of the author.

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

MILTON WASHINGTON,                          :
                    PLAINTIFF               :
                                            :
                    Vs.                     :   Civil ACTION NO. _____
                                            :
LEHIGH COUNTY DISTRICT ATTORNEY'S :
OFFICE AND                                  :
DISTRICT ATTORNEY JAMES B. MARTIN :
                    DEFENDANTS              :

## PROOF OF SERVICE

Milton Washington, hereby states and avers that he is the Pro se
plaintiff in the above-captioned matter and that he has served all
Defendants by First Class Mail.


## SERVED BY FIRST CLASS MAIL

Lehigh County District Attorney's Office
District Attorney James B. Martin, Esq.
Lehigh County Courthouse
455 Hamilton Street, Room 307
Allentown, PA 18101-1614

Heather F. Gallagher, Esq.
Senior Deputy District Attorney
Lehigh County Courthouse
455 Hamilton Street, Room 307
Allentown, PA 18101-1614

Milton Washington, Pro Se AS2081
SCI Dallas
1000 Follies Road Drawer K
Dallas, PA 18612-0286

Dated _____, 2021

Milton Washington, AS2081 A Annex
SCI Dallas
1000 Follies Road-Drawer K
Dallas, PA 18612-0286


January 10, 2021


Forma Pauperis Granted
Re: **Washington et al v. Wolf, et al**
    **Civil Action No. 3:20-CV- 0122**

Dear Mr. Welsh,

Enclosed, you will find a Civil Action Complaint under 42
U.,S.C. §1983 requesting an Injunction Order to be issued, Ordering
the defendants to release DNA evidence that's never be subject to
DNA testing. Please file the enclosed Civil Action Complaint in my
behalf.




                    Sincerely,

                    **Milton Washington**


CC/Copy has been filed

All Defendants have been served
by First Class Mail



"Inmate mail

U.S. POSTAGE >> PITNEY BOWES

ZIP 18612
02 4W
0000356685

$ 007.50⁰
JAN 11 2021

Milton Washington
ID AS2081 A Annex 20
SCI Dallas
1000 Follies Road-Drawer K
Dallas, PA 18612-0286

RECEIVED
SCRANTON

JAN 1 2 2021

PER _____ DEPUTY CLERK

Mr. Peter J. Welsh, Clerk Of Court
Office Of The Clerk
United States District Court For The
Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 North Washington Avenue
P.O. Box 1148
Scranton, PA 18501-1148

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9022 0078 9087 5532 26

Label 400 Jan. 2013
7690-16-000-7948

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use

Label 107R, May 2014