IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILTON WASHINGTON,<br>                Plaintiff,<br>      v.<br>LEHIGH COUNTY DISTRICT<br>ATTORNEY'S OFFICE, *et al.*,<br>                Defendants. | CIVIL ACTION NO. 21-159 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                                    **May 24, 2021**

Plaintiff Milton Washington, a prisoner currently incarcerated at SCI-Dallas serving a life sentence, filed this civil action pursuant to 42 U.S.C. § 1983. Named as Defendants are the Lehigh County District Attorney's Office, District Attorney James B. Martin, and Assistant District Attorney Heather Gallagher. For the following reasons, the Court dismiss Washington's Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[1]

### I. BACKGROUND

Washington, who maintains his innocence, was convicted of the June 1986, first-degree murder of Tina Marie Metzger Wyatt.[2] No physical evidence linked Washington to Wyatt's death or the crime scene, and the Pennsylvania Superior Court noted that "the case against

---

[1] Washington also seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement. However, a court may screen the action under 28 U.S.C. § 1915(e)(2), prior to considering a defendant's request to proceed *in forma pauperis*. *See Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019). Here, given the uncommon nature of this case, the Court will first consider if Washington can plausibly bring a claim before the *in forma pauperis* request.

[2] *See Commonwealth v. Washington*, No. 3596 EDA 2015, 2017 WL 4001643 (Pa. Super Ct. Sept. 12, 2017).

[Washington] was not overwhelming,"[3] but the jury credited the testimony of four witnesses, who claimed that Washington confessed to them while he was incarcerated.[4]

On February 29, 2012, the Commonwealth consented to, and the Pennsylvania Post-Conviction Relief Act (PCRA) court ordered, post-conviction DNA testing of numerous items of physical evidence. The Stipulated Order permitted DNA testing on all evidence in the District Attorney's possession.[5] During the 1986 investigation "[t]he state police laboratory received vaginal, anal, and gum swabs and smears, throat swabs, pubic hairs and nail clippings taken during the autopsy for biological testing. The laboratory also received blood samples and other evidence collected at the crime scene, including the wood pieces, the knife, and the victim's clothing."[6] However, not all of this was available for testing or provided results.

The DNA testing concluded that Washington was not the source of the "male DNA profile obtained from the sperm on the inside crotch of Wyatt's jeans. The state police uploaded this unidentified male DNA profile to CODIS, but it did not match the profile of any individual in the DNA databanks or establish any 'investigative leads.'"[7] The "numerous other items of evidence" that were tested did not provide conclusive results.[8]

---

[3] *Id.* at *8.

[4] The Superior Court noted that "these witnesses had no personal knowledge of Wyatt's death," and "had an incentive to finger him as the murderer to obtain their release from custody in their own cases." *Id.* One witness executed a sworn affidavit recanting his trial testimony shortly after sentencing, another witness also recanted, saying that he made up the story about Washington's confession with a third witness, and the fourth's testimony "was demonstrably flawed." *Id.* Washington has "filed multiple unsuccessful post-conviction petitions requesting a new trial based on [these witness's] recantations." *Id.* at *3.

[5] ECF No. 1 at 1, 23; *Washington*, 2017 WL 4001643, at *4.

[6] *Id.* at *1

[7] *Id.* at *4.

[8] *Id.*

Washington filed a fourth PCRA arguing that "that after-acquired evidence of DNA test results exonerate[s] him as the murderer."[9] The PCRA court dismissed his petition, and after reviewing the procedural requirement under the PCRA for considering this type of DNA evidence, the Superior Court affirmed the PCRA Court's denial of relief. The Superior Court explained:

> For two reasons, the PCRA court determined that the new DNA evidence would not change the outcome of Appellant's trial: (1) the circumstantial evidence favorable to the Commonwealth, such as the fact that Wyatt was a prostitute and there was no evidence of the time the semen was deposited; and (2) the court's view that the DNA evidence was simply "corroborative in nature," because the jury "was aware of the fact that semen was present on a vaginal swab done on the victim," and that there was "no direct physical evidence" linking Appellant to the crime. PCRA Ct. Op., 10/8/12, at 4–5. We conclude that the PCRA court balanced the evidence correctly by analyzing the new DNA evidence "in light of the evidence as a whole."
> 
> . . .
> 
> [T]he DNA results did not change the complexion of the evidence enough to warrant a new trial. Although the DNA tests irrefutably excluded Appellant as the source of the semen on Wyatt's jeans, the jury was made aware during trial that no physical evidence connected Appellant to the crime. The DNA tests merely provided further proof that there was no physical evidence of Appellant's guilt. Further, the DNA results do not demonstrate **when** the semen was deposited on her jeans. Given her profession as a prostitute, one of her customers could have deposited the semen well before she was killed. Moreover, given the evidence in this case, we are constrained to disagree with Appellant that the fact that his DNA was not found in the sperm stain would have permitted his trial counsel to mount a defense that was not already available at the time of trial. Thus, Appellant failed to prove by a preponderance of the evidence that the new evidence would likely have compelled a different verdict.[10]

Thereafter, on April 3, 2018 Washington filed a fifth PCRA petition challenging the post-conviction DNA testing.[11] He argued that "the Commonwealth or the PCRA court suppressed

---

[9] *Id.* at *1.

[10] *Id*, at *7–*8 (citations omitted) (emphasis in original).

[11] *See Commonwealth v. Washington*, No. 1482 EDA 2018, 2019 WL 210672 (Pa. Super. Ct. Jan. 16, 2019).

3

the autopsy evidence and violated the March 6, 2012 order for post-conviction DNA testing," and he sought the DNA testing of the "rape kit" and the allegedly suppressed evidence.[12] The autopsy evidence included "nail clippings and vaginal, anal, throat, and gum swabs" collected by the coroner.[13]

The Pennsylvania Superior Court affirmed the PCRA Court's conclusion that Washington's fifth PCRA petition was untimely. The Superior Court also noted:

> To the extent Appellant refers to the suppression of the autopsy evidence, Appellant has not established that such evidence still existed, was in the possession of the Commonwealth or the court, or was withheld by a government official. Moreover, Appellant's allegation that the Commonwealth withheld evidence of the fact that the vaginal swab tested positive for the presence of sperm lacks any support in the record.[14]

Furthermore, the Superior Court held that Washington's request for post-conviction DNA testing under 42 Pa.C.S. § 9543.1 was not subject to the PCRA's timeliness requirements. But "because [Washington] has failed to establish that the evidence from the victim's autopsy was available when he filed his fifth PCRA petition, [Washington] did not establish a right to additional DNA testing under Section 9543.1."[15]

---

[12] *Washington*, 2019 WL 210672, at *2 (citations omitted).

[13] *Id.* at *1.

[14] *Id.* at *3 (footnote omitted). Citing the initial autopsy report Washington alleges in his Complaint that the Superior Court misrepresented the biological evidence when it found that his allegation that the Commonwealth withheld evidence of the fact that the vaginal swab tested positive for the presence of sperm lacked any support in the record. (ECF No. 1 at 10.) Rather, he alleges, the autopsy report indicated the presence of sperm on one of the vaginal swabs. (*Id.*) For screening purposes, the Court accepts Washington's allegation as true that the autopsy report indicated the presence of sperm on a swab.

[15] *Id.* at *3 n.7.

4

Washington has now filed this action in federal court. He continues to allege that there is physical evidence in the possession of the Defendants which was never subject to DNA testing, and seeks an injunction directing the Defendants to release the material for testing.[16]

The material Washington seeks to test for DNA evidence includes Wyatt's underwear, three vaginal swabs, three vaginal glass smear slides, and the victim's fingernail clippings ("the subject material"), all of which was listed in the autopsy report.[17] He has brought this action under § 1983, and asserts that in not making the materials available for testing, Defendants have deprived him of due process of law and the opportunity to make a conclusive showing that he is innocent of the crimes for which he is incarcerated. Washington further alleges their refusal to produce the material violates the Due Process Clause, the Equal Protection Clause, the Eighth Amendment, the Confrontation and Compulsory Process Clauses of the Sixth Amendment, his rights to access the courts to obtain legal relief, and his right to seek executive clemency.[18]

**II. STANDARD OF REVIEW**

Because Washington has requested to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)[19] which requires the Court to determine whether the complaint contains "sufficient factual matter,

---

[16] ECF No. 1 at 3. The Court adopts the pagination supplied by the CM/ECF docketing system.

[17] ECF No. 1 at 1, 30. The subject material is also referred to in the state court record as the contents of a rape kit.

[18] *Id.* at 4.

[19] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

accepted as true, to state a claim to relief that is plausible on its face."[20] Conclusory allegations do not suffice.[21] As Washington is proceeding *pro se*, the Court construes his allegations liberally.[22]

### III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[23]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[24]

#### A. Washington's Claims are Barred by *Rooker-Feldman*

In his fifth PCRA petition, Washington unsuccessfully challenged the post-conviction DNA testing. Because the fifth petition litigated his right to receive the subject material in state court, the Court must first conduct a *Rooker-Feldman* analysis.[25]

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). **Error! Main Document Only.**

[21] *Id.*

[22] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[23] 42 U.S.C. § 1983.

[24] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[25] The Court notes that this type of claim has been held by the United States Court of Appeals for the Third Circuit to **not** be barred by *Heck v. Humphrey*, 512 U.S. 447 (1994). *See Grier v. Klem*, 591 F.3d 672, 678 (3d Cir. 2010) (citing *Wilkinson v. Dotson,* 544 U.S. 74 (2005); *District Attorney's Office for the Third Judicial District v. Osbornes,* 557 U.S. 52 (2009). The rationale of *Grier* is that a claim that a convicted prisoner is entitled to evidence

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments."[26] This is because "[28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court judgment solely in th[e Supreme] Court."[27] Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[28] The *Rooker-Feldman* doctrine applies when: "(1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment."[29]

All four requirements are met here. First, Washington lost his state-court action when the PCRA court denied his fifth PCRA petition seeking DNA testing of the subject material under § 9543.1, and the Superior Court affirmed the decision. Second, Washington asserts he was injured

---

– that may be used to later impugn a criminal conviction – is not itself a claim that seeks to invalidate or undermine his conviction.

*Grier*, however, held open whether such a claim can ultimately succeed since there is no substantive due process right to access DNA evidence, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52, 129 S.Ct. 2308, 2322 (2009), and procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for postconviction relief to a prisoner, *id.* at 2319-20. Nonetheless, the *Grier* Court permitted the claim to proceed. *Grier*, 591 F.3d at 679 (noting that *Osborne* "envisioned a plaintiff like Grier, who availed himself of state procedures without success and claims a due process violation precisely because of that failure. Therefore, as instructed by the Supreme Court in *Osborne, id.,* we will remand this case to the District Court to determine whether Grier's procedural due process rights, when considered within the framework of Pennsylvania's procedures for postconviction relief, were violated.")

[26] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).

[27] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 (2005).

[28] *Id.* at 166 (quotations omitted).

[29] *Wade v. Monroe Cty. Dist. Att'y*, 800 F. App'x 114, 118 (3d Cir. 2020), cert. denied, 141 S. Ct. 344, 208 L. Ed. 2d 79 (2020) (citing *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018) (quoting *In re Phila. Entm't & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018)).

by the Pennsylvania courts' alleged misinterpretation and application of § 9543.1 and resulting denial of his motion. Specifically, Washington contends that he must be permitted to obtain the subject material from the Defendants because his inability to access the subject material was thwarted by the PCRA court's decision. Third, the state-court judgment was entered before Washington filed his federal suit. Fourth, Washington has asked this Court to order relief—an injunction to turn over the subject material—that would require a de facto review of the validity of the contrary state-court judgment. Because all four elements are met here, the *Rooker-Feldman* doctrine bars his claim.[30]

Furthermore, this case is distinguishable from *Skinner v. Switzer*,[31] where the Supreme Court held that the *Rooker-Feldman* doctrine did not bar the suit because petitioner "challenge[d] . . . Texas' postconviction DNA statute 'as construed' by the Texas courts," as denying him procedural due process, as opposed to challenging a particular decision by the state court.[32] Here

---

[30] *See Wade*, 800 F. App'x at 118. In *Wade*, the United States Court of Appeals for the Third Circuit considered the applicability of the *Rooker-Feldman* doctrine in the context of a § 1983 suit challenging a state's failure to produce evidence for DNA testing, and held that under the *Rooker-Feldman* doctrine, the federal court lacks subject-matter jurisdiction to consider this kind of as-applied challenge to Pennsylvania's DNA statute. *Id.* at 117.

Other Courts of Appeals have also held that the *Rooker-Feldman* doctrine bars challenges nearly identical to the one raised here. *See Alvarez v. Attorney Gen. for Florida,* 679 F.3d 1257, 1264 (11th Cir. 2012) ("The district court did not err in determining that, to the extent Alvarez has alleged a violation of procedural due process because of the way the Florida state courts applied Florida's DNA access procedures to the facts of his case, *Rooker-Feldman* barred the court from exercising subject-matter jurisdiction over the claim"); *McKithen v. Brown,* 626 F.3d 143, 154-55 (2d Cir. 2010) (holding that the *Rooker-Feldman* doctrine barred the claim that "the state court incorrectly and unconstitutionally interpreted the [New York DNA] statute by not assuming exculpatory results," and noting that "[t]he proper vehicle for McKithen to challenge the state court's interpretation of [the statute] was an appeal to the New York Appellate Division"); *In re Smith,* 349 F. App'x 12, 15 (6th Cir. 2009) ("[B]y complaining that the [Michigan] state trial court wrongfully denied him the DNA evidence because rejection of his petition was improper — but not complaining that the statute itself is flawed — Smith is 'complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment,' which is clearly barred by *Rooker-Feldman*." (quoting *Exxon Mobil,* 544 U.S. at 291)).

[31] 562 U.S. 521 (2011).

[32] *Id.* at 530.

8

Washington is challenging the result of the state courts' application of Pennsylvania's DNA access procedures to the facts of his case, and not the constitutionality of those underlying procedures.

Washington's as-applied procedural due process challenge boils down to a claim that the Defendants caused him constitutional injury by denying him access to the subject material he seeks under Pennsylvania's concededly constitutional procedures. If he were to succeed on this claim in federal court, it would "effectively nullify" the state courts' judgment in his fifth PCRA petition. Therefore, his challenge is barred by the *Rooker-Feldman* doctrine.

### B. Washington cannot State a Plausible Claim under Section 1983

Even if his claim was not barred by *Rooker-Feldman*, Washington has failed to state a plausible claim that the Defendants violated his rights as protected by the Due Process Clause by refusing to turn over the subject material.

Three kinds of § 1983 claims may be brought under the Due Process Clause of the Fourteenth Amendment.[33] First, a plaintiff may bring suit under § 1983 for a violation of his specific rights as guaranteed by the Bill of Rights.[34] Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property.[35] Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process

---

[33] *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).

[34] *Id.*

[35] *Id.*

9

Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.[36]

1. *Washington has failed to state a Section 1983 claim based on a violation of substantive or procedural due process rights*

The Court will first consider whether Washington can show a violation of his procedural or substantive due process rights. The Supreme Court has held that there is no substantive due process right in the federal constitution to access to DNA evidence in the post-conviction setting.[37] Washington can therefore only proceed based on a claim of a violation of a procedural due process right.[38]

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest.[39] Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest. If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. Due process is not a technical conception with a fixed content unrelated to

---

[36] *Id.* (quoting *Daniels v. Williams,* 474 U.S. at 331)).

[37] *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 74 (2009). Specifically, the Supreme Court found that there was no long history of such a right of access to state evidence to perform DNA testing and the mere novelty of such a claim was reason enough to doubt that substantive due process sustains it. *Id.* at 72 (quoting *Reno v. Flores,* 507 U.S. 292, 303 (1993)); *accord Grier*, 591 F.3d at 678 (relying upon *Osborne* and acknowledging that plaintiff had no substantive due process right to access DNA evidence).

[38] *See Skinner,* 562 U.S. at 525 ("*Osborne* rejected the extension of substantive due process to this area and left slim room for the prisoner to show that the governing state law denies him procedural due process.").

[39] *Daniels,* 474 U.S. at 339; *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).

time, place, and circumstance.[40] Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."[41]

The Supreme Court's decision in *Osborne*—which recognized that a prisoner may retain a state-created liberty interest in demonstrating his innocence with new evidence under state law—controls this claim. Like the plaintiff in *Osborne,* Washington has an analogous state-created liberty interest in demonstrating his innocence in the context of post-conviction proceedings with appropriate evidence. Therefore, to state a claim, Washington must plausibly allege that the state procedures for post-conviction DNA testing, as applied to him, violated his procedural due process rights. The Court must consider whether

> consideration of [the plaintiff's] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation. Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.[42]

It is the Plaintiff's burden to demonstrate the inadequacy of the state-law procedures available to him in state post-conviction relief.[43]

The core defect in Washington's claim is the absence of any evidence that the subject material exists. In affirming the PCRA Court's conclusion that Washington's fifth PCRA petition was untimely, the Pennsylvania Superior Court specifically stated that, "[t]o the extent Appellant refers to the suppression of the autopsy evidence, Appellant has not established that

---

[40] *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).

[41] *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

[42] *Osborne,* 557 U.S. at 68-69 (internal quotations and citations omitted).

[43] *Id.* at 71.

11

such evidence still existed, was in the possession of the Commonwealth or the court, or was withheld by a government official. Moreover, Appellant's allegation that the Commonwealth withheld evidence of the fact that the vaginal swab tested positive for the presence of sperm lacks any support in the record."[44] Washington makes allegations that the material exists, but given the state courts' finding that no evidence existed, Washington is collaterally estopped from asserting otherwise.[45] As no evidence exists to be tested, Washington cannot assert a plausible due process claim. The Commonwealth's postconviction relief procedures were adequate to vindicate Washington's due process rights, as they were available to him and used to test the material that existed to adjudicate his fourth PCRA petition.

But even if the subject material does exist, the Superior Court's determination on Washington's fourth PCRA petition establishes that further testing would not be available under the statute, and thus, there can be no plausible due process claim. Under the statute governing postconviction DNA testing, testing is only available when the petitioner can make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence.[46]

---

[44] *Washington*, 2019 WL 210672, at *3.

[45] *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247 (3d Cir. 2010) (stating that the doctrine of collateral estoppel requires that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (internal quotation marks and citation omitted); *see also, e.g., Wilson v. City of Philadelphia*, Civ. A. No. 04-05396, 2016 WL 1399264, at *2 (E.D. Pa. Apr. 8, 2016) ("Under Pennsylvania law, relitigation of an issue is barred by collateral estoppel if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.") (holding that PCRA court's finding that plaintiff's *Batson* rights were violated collaterally estopped relitigation in context of 1983 *Monell* claim).

[46] *See* 42 Pa. Cons. Stat. § 9543.1(c)(3); *see also Commonwealth v. Williams,* 35 A.3d 44, 49 (Pa. Super. Ct. 2011); *Commonwealth v. Smith,* 889 A.2d 582, 584 (Pa. Super. Ct. 2005), *appeal denied,* 905 A.2d 500 (Pa. 2006). Additionally, under § 9543.1(d)(2), a court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence.

The record in the fourth PCRA petition already contained DNA evidence from other samples that irrefutably excluded Washington as the source of the semen on Wyatt's jeans. The Superior Court, having reviewed the totality of the evidence, and noting specifically that the jury was made aware during trial that no physical evidence connected Washington to the crime, concluded that the PCRA court was correct when it determined that the new DNA evidence did not change the outcome of Washington's trial. Citing the circumstantial evidence favorable to the Commonwealth, and noting that there was "no direct physical evidence" linking Washington to the crime, the Superior Court concluded that the PCRA Court properly balanced the evidence by analyzing the new DNA evidence "in light of the evidence as a whole" before concluding that the DNA results did not change the complexion of the evidence enough to warrant a new trial.

Additional DNA tests from the subject material that hypothetically also excludes Washington as a source would at best be merely cumulative of non-matching evidence already considered. Additional non-matching DNA evidence, accordingly, would again fail to present a *prima facie* case demonstrating Washington's actual innocence under the PCRA's DNA provisions. Washington's Due Process claim is not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

   2. *Washington has failed to state a Section 1983 claim based on the Bill of Rights*

Washington asserts that Defendants failure to produce the subject material for testing violates his rights as guaranteed in the Bill of Rights by the First, Sixth and Eighth Amendments.

   a.  <u>First Amendment Access to Courts</u>

Washington alleges that Defendants violated his right of access to the courts and to seek executive clemency. To state a claim for denial of access to courts, a complaint must identify all of the following: a non-frivolous, underlying claim; the official acts frustrating the litigation; and

a remedy that may be awarded as recompense but that is not otherwise available in a future suit.[47]

In *Christopher v. Harbury*, the Supreme Court explained that a plaintiff must specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently.[48] The statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that "the 'arguable' nature of the underlying claim is more than hope."[49] A plaintiff must then clearly allege in the complaint the official acts that frustrated the underlying litigation, and must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation.[50]

Here, because he has been able to challenge his conviction based on DNA results through his fourth and fifth PCRA petitions, Washington has failed to identify any non-frivolous legal action he is unable to pursue as a result of Defendant's alleged actions. Thus, he has failed to state a claim upon which relief may be granted with respect to his access to court's claim.[51]

---

[47] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

[48] *Id.* at 417.

[49] *Id.*

[50] *Id.* at 414.

[51] *Accord Alvarez v. Attorney Gen. for Florida,* 679 F.3d 1257, 1265 (11th Cir. 2012); *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("Because we have concluded that Alabama's mechanism for postconviction relief is consistent with due process under *Osborne's* fundamental fairness standard, it follows that it does not improperly interfere with Cunningham's right of access to the courts.").

Washington also argues that Defendants actions have denied him executive clemency, but the Supreme Court has held that there is no federal constitutional right to executive clemency. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). As a result, executive clemency "cannot be a basis for an access to courts claim." *Cromartie v. Shealy*, 941 F.3d 1244, 1258 (11th Cir. 2019).

b. <u>Sixth Amendment and Eighth Amendment Claims</u>

Washington seeks to invoke liability under the Sixth Amendment's confrontation and compulsory process clauses, as well as the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments."[52]

But Washington's allegations do not show a violation of these rights.[53] As the Eleventh Circuit explained in *Alvarez v. Attorney Gen. for Florida*, "[f]or us to sweep aside [] established procedures and constitutionalize a right to access evidence for DNA testing under the Sixth or Eighth Amendments would squarely conflict with the Supreme Court's explicit rejection of an invitation "[t]o suddenly constitutionalize this area."[54] Accordingly, these claims are also not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## C. Washington has not Plausibly Stated an Equal Protection Claim

Washington asserts an Equal Protection claim under the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

---

[52] U.S. Const. amend. VI, VIII.

[53] *Accord Alvarez,* 679 F.3d at 1265 ("We can discern no conceivable basis in this case, nor has Alvarez provided us with one, for attempting an end-run around the *Osborne* holding under the cloak of the Sixth or Eighth Amendments.").

[54] *Id.* (citing *Osbourne* 557 U.S. at 72-73; *see also id.* 73 ("We are reluctant to enlist the Federal Judiciary in creating a new constitutional code of rules for handling DNA."). *See also McKithen v. Brown*, 626 F.3d 143, 155 (2d Cir. 2010) ("'[t]he only way the Eighth Amendment is possibly implicated,' as a legal means for compelling the disclosure of evidence for post-conviction DNA testing, 'is if it permits a freestanding claim of actual innocence. . . .' [But] "[t]he Supreme Court has left conspicuously unanswered the question whether the Eighth Amendment provides such a freestanding claim," although it has noted the "'difficult questions such a right would pose and the high standard any claimant would have to meet.'") (quoting *Osborne*); *Williams v. McCulloch*, Civ. A. No. 15-70, 2015 WL 222170, at *3 (E.D. Mo. Jan. 14, 2015) ("state's refusal to conduct DNA testing is not punishment"); *Wade v. Monroe Cty. Dist. Attorney*, Civ. A. No. 15-584, 2017 WL 4413195, at *9 (M.D. Pa. Sept. 29, 2017) ("defendants' refusal to release evidence or conduct DNA testing is not a 'punishment' proscribed by the Eighth Amendment"); *Nelson v. Preleski*, Civ. A. No. 20-778, 2020 WL 4937991, at *9 (D. Conn. Aug. 24, 2020) ("consonant with *Osborne*'s reasoning in declining to recognize a substantive due process right, this court finds that Nelson has no right under the Eighth Amendment to release of evidence for postconviction DNA testing).

direction that all persons similarly situated should be treated alike."[55] To set forth an Equal Protection claim, a plaintiff must demonstrate that he is a member of a protected class and that he received different treatment than that received by other similarly-situated individuals.[56] Additionally, "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment."[57] "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"[58] Washington has made no allegations that he was treated differently from those similarly situated, and his Equal Protection claim is not plausible.

**D. Washington cannot bring Claims Against the Lehigh County District Attorney's Office**

The Lehigh County District Attorney's Office must be dismissed with prejudice on the alternate ground that the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983.[59]

---

[55] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[56] *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).

[57] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

[58] *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

[59] *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"). *But see Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015) (declining to follow *Reitz* because its "central holding" as to the Bucks County District Attorney's Office was only that plaintiffs had failed to meet an evidentiary burden and the Court's statement at the end of the opinion, that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability," was "arguably dicta").

## IV. Conclusion

For the foregoing reasons, the Court will dismiss Washington's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all Defendants. Because his claims are barred by the *Rooker-Feldman* doctrine, any attempt at amendment would prove futile and the dismissal is with prejudice.[60] An order will be entered.

---

[60] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).